Filing # 102831099 E-Filed 02/05/2020 08:35:13 PM

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.  **CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>THIRTEENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>HILLSBOROUGH</u>  COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>Debrynna Garrett, Clifford Jeury</u>
 Plaintiff
            vs.
<u>Facebook, Inc., Cognizant Business Services Corporation</u>
Defendant

II. **AMOUNT OF CLAIM**
  Please indicate the estimated amount of the claim rounded to the nearest dollar $<u>30,000</u>

III. **TYPE OF CASE**    (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☒ Negligence – other
  - ☐ Business governance
  - ☒ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure
  - ☐ Homestead residential foreclosure
  - ☐ Non-homestead residential foreclosure
  - ☐ Other real property actions
- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical

- ☐ Malpractice – other professional
- ☐ Other
  - ☐ Antitrust/Trade Regulation
  - ☐ Business Transaction
  - ☐ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☐ Discrimination-employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

- ☐ County Civil
  - ☐ Small Claims up to $8,000
  - ☐ Civil
  - ☐ Replevins
  - ☐ Evictions
  - ☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☒ No ☐

**IV.     REMEDIES SOUGHT** (check all that apply):
☒  Monetary;
☒  Non-monetary declaratory or injunctive relief;
☐  Punitive

**V.      NUMBER OF CAUSES OF ACTION:**
    (Specify)

    4

**VI.     IS THIS CASE A CLASS ACTION LAWSUIT?**
☒ Yes
☐ No

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒ No
☐ Yes – If "yes" list all related cases by name, case number and court:

**VIII.   IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ Yes
☐ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature:   s/ Jay P Lechner
             Attorney or party
FL Bar No.:  504351
             (Bar number, if attorney)
             Jay P Lechner
             (Type or print name)
  Date:   02/05/2020

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**
**CIRCUIT CIVIL DIVISION**

DEBRYNNA GARRETT and CLIFFORD
JEURY, individually and on behalf of all
others similarly situated,

      Plaintiffs,

v.                                Case No.:

FACEBOOK, INC., and COGNIZANT
BUSINESS SERVICES CORPORATION,

      Defendants.

_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiffs DEBRYNNA GARRETT and CLIFFORD JEURY ("Plaintiffs") hereby sue the Defendants, FACEBOOK, INC. ("Facebook"), and COGNIZANT BUSINESS SERVICES CORPORATION ("Cognizant") (collectively, "Defendants") to protect themselves and all others similarly situated from the dangers of psychological trauma resulting from Defendants' failure to provide a safe workplace for the thousands of "content moderators" who are entrusted to provide the safest environment possible for Facebook users.

## BACKGROUND

      1.     Every day, Facebook users post millions of videos, images, and livestreamed broadcasts of child sexual abuse, rape, torture, bestiality, beheadings, suicide, racist violence and murder. To maintain a sanitized platform, maximize its already vast profits, and cultivate its public image, Facebook relies on people like Plaintiffs – known as "content moderators" – to view those posts and remove any that violate the corporation's terms of use.

      2.     From their cubicles during the overnight shift in Cognizant's Tampa offices,

Plaintiffs witnessed thousands of acts of extreme and graphic violence. As another Facebook content moderator recently told the Guardian, "You'd go into work …, turn on your computer and watch someone have their head cut off. Every day, every minute, that's what you see. Heads being cut off."

3. As a result of constant and unmitigated exposure to highly toxic and extremely disturbing images through Facebook's content review systems, Plaintiffs and other class members developed and suffer from significant psychological trauma and/or post-traumatic stress disorder ("PTSD").

4. In an effort to cultivate its image, Facebook helped draft workplace safety standards to protect content moderators like Plaintiffs and the proposed class from workplace trauma and associated adverse consequences, which include pre-hiring psychological screening; providing moderators with robust and mandatory counseling and mental health support; altering the resolution, audio, size, and color of trauma-inducing images; and training moderators to recognize the physical and psychological symptoms of PTSD.

5. Other recommended safety standards include: having content moderators work in pairs or teams rather than alone; improving working conditions by not focusing solely on efficiency and productivity; and providing additional breaks or "wellness time" during periods of extraordinary stress.  In addition, Cognizant employees requested to change their queues. For example, several content moderators asked the company to change which queues they were assigned, whereby Workforce Management could periodically place a moderator in less graphic queues, such as regulated goods.  Defendants failed to implement any of these safety standards.

6. But Defendants ignore the very workplace safety standards they helped create. Instead, the multibillion-dollar corporations affirmatively require their content moderators to work

under conditions known to cause and exacerbate psychological trauma.

7.      Facebook contracts with companies like Cognizant to serve as its agent responsible for finding, hiring and employing the moderators, and then laying them off when the contract expires, thereby attempting to absolve Defendants of accountability for the mental health of (offering no psychological support to) their workers after they are laid off. In fact, Cognizant is shutting down its Tampa office in February 2020, laying off its workforce and leaving content moderators, including Plaintiffs, with no means of obtaining requisite ongoing medical monitoring, screening, diagnosis, or adequate treatment after suffering psychological trauma during their employment.

8.      By requiring their content moderators to work in dangerous conditions that cause debilitating physical and psychological harm and then laying them off when the contract expires in order to absolve themselves of accountability for their mental health issues, Defendants violate Florida law.

9.      Without this Court's intervention, Defendants will continue to breach the duties they owe to the content moderators who review content on Facebook's platforms.

10.     Content moderators are essentially the first responders of the internet, performing a critical function on a platform with billions of users. Many times, moderators are the first to see emergency situations and report them to Facebook to report to local authorities. Plaintiffs were specifically referred to as "first responders," and Facebook compiles statistics about how moderators assist law enforcement. Plaintiffs and the other content moderators, at a minimum, deserve the same protections as other first responders, which includes workers' compensation/health coverage for the PTSD caused by the working conditions.

11.     On behalf of themselves and all others similarly situated, Plaintiffs brings this

action (1) to ensure that Defendants cease to engage in these unlawful and unsafe workplace practices and instead provide content moderators with safe tools, systems, and mandatory ongoing mental health support, (2) to establish a medical monitoring fund for testing and providing mental health treatment to the thousands of current and former content moderators affected by Defendants' unlawful practices, and (3) to provide monetary compensation to the thousands of current and former content moderators for the lost wages and medical and mental health expenses incurred as a result of the Defendants' unlawful practices.

## JURISDICTION AND VENUE

12.     This is an action for damages in excess of $30,000.00, exclusive of interest, costs, and equitable relief.

13.     Venue is proper in this Court because the unlawful conduct giving rise to the claims herein occurred within this judicial district, and at least one Defendant is located in this judicial district.

14.     This Court has personal jurisdiction over Cognizant because the corporation operates, conducts, engages in, and carries on a business venture in this state and has an office in this judicial circuit, at 7725 Woodland Center Blvd., Tampa, FL 33614, and regularly conducts substantial business there, committed a tortious act within Florida, and engages in substantial and not isolated activity within Florida.

15.     This Court has personal jurisdiction over Facebook because the corporation operates, conducts, engages in, and carries on a business venture in this state and has an office in this state, located at 701 Brickell Ave., Miami, Florida 33131, and regularly conducts substantial business there and throughout the state, committed a tortious act within Florida, and engages in substantial and not isolated activity within Florida.

## PARTIES

16.     Plaintiff Garrett is a resident of Hillsborough County, Florida.

17.     Plaintiff Jeudy is a resident of Hillsborough County, Florida.

18.     Defendant Facebook provides "products that enable people to connect and share with friends and family through mobile devices, personal computers, and other surface" or "to share their opinions, ideas, photos and videos, and other activities with audiences ranging from their closest friends to the public at large." Facebook is a publicly traded corporation incorporated under the laws of Delaware, with its headquarters located at 1601 Willow Road, Menlo Park, California, 94025.

19.     Defendant Cognizant is a professional services vendor that employed approximately 800 workers at its Facebook content moderation site in Tampa. Cognizant is a publicly traded corporation incorporated under the laws of Delaware, with its headquarters located at 500 Frank W. Burr Boulevard, Teaneck, New Jersey, 07666.

## FACTUAL ALLEGATIONS

**A.      Content moderators watch and remove some of the most depraved images on the internet to protect users of Facebook's products from trauma-inducing content.**

20.     Content moderation is the practice of removing online material that violates the terms of use for social networking sites or applications like Facebook.com and Instagram.

21.     Instead of scrutinizing content before it is published to its users, Facebook primarily relies on users to report inappropriate content. Facebook receives more than one million user reports of potentially objectionable content on its social media sites and applications every day. Human moderators review the reported content – sometimes thousands of videos and images every shift – and remove those that violate Facebook's terms of use.

22.     After content is flagged, Facebook's algorithms direct it to a content moderator,

who then reviews it using a platform developed by Facebook.

23. Facebook asks content moderators to review more than 10 million potentially rule-breaking posts per week via its review platforms. Facebook seeks to ensure all user-reported content is reviewed within 24 hours of a report and with an overall error rate of less than one percent.

24. Facebook has developed and continually revises hundreds of rules that content moderators use to determine whether flagged content – i.e., posts, comments, messages, images, videos, advertisements, etc. – violates Facebook's policies.

25. Facebook has also developed expectations for the amount of time a content moderator should need to review different types of flagged content.

26. According to Monika Bickert, head of global policy management at Facebook, Facebook conducts weekly audits of every content moderator's work to ensure that its content rules are being followed consistently.

27. In August 2015, Facebook rolled out Facebook Live, a feature that allows users to broadcast live video streams on their Facebook pages. Mark Zuckerberg, Facebook's chief executive officer, considers Facebook Live to be instrumental to the corporation's growth. Mr. Zuckerberg has been a prolific user of the feature, periodically "going live" on his own Facebook page to answer questions from users.

28. But Facebook Live also provides a platform for users to livestream murder, beheadings, torture, and even their own suicides, including the following:

- In late April 2017, a father killed his 11-month-old daughter and livestreamed it before hanging himself. Six days later, Naika Venant, a 14-year-old who lived in a foster home, tied a scarf to a shower's glass doorframe and hung herself. She streamed the whole suicide

in real time on Facebook Live. Then in early May, a Georgia teenager took pills and placed a bag over her head in a suicide attempt. She livestreamed the attempt on Facebook and survived only because viewers watching the event unfold called police, allowing them to arrive before she died.

- On 15 March 2019, the horrific mass shooting in Christchurch, New Zealand, which killed 50 people at two mosques, was livestreamed on Facebook as the shooter pulled up to a mosque in Christchurch, New Zealand, grabbed guns out of his vehicle and stormed inside, opening fire on worshipers. By the time Facebook removed the 17-minute video, it had been viewed roughly 4,000 times, the company said.

29. Facebook understands the dangers associated with a person watching this kind of imagery.

30. In the context of protecting users from this kind of content, Mr. Zuckerberg announced on May 3, 2017:

"Over the last few weeks, we've seen people hurting themselves and others on Facebook—either live or in video posted later. Over the next year, we'll be adding 3,000 people to our community operations team around the world – on top of the 4,500 we have today – to review the millions of reports we get every week, and improve the process for doing it quickly.

These reviewers will also help us get better at removing things we don't allow on Facebook like hate speech and child exploitation. And we'll keep working with local community groups and law enforcement who are in the best position to help someone if they need it – either because they're about to harm themselves, or because they're in danger from someone else."

31. According to Sheryl Sandberg, Facebook's chief operating officer, "Keeping people safe is our top priority. We won't stop until we get it right."

32. Today, approximately 15,000 content moderators around the world review content via Facebook's review platforms.

33.     Most of these 15,000 content moderators, like Plaintiffs and the proposed class here, are employed by third-party vendors of Facebook and are not Facebook employees.

34.     For many reasons, including short-term contracts and the trauma associated with the work, most content moderators – like Plaintiffs – remain in the position for short periods of time.  When the contractors' contracts expire, the content moderators are laid off and abandoned by Defendants, with no access to adequate or ongoing mental health services or psychological support.

**B.**     **Repeated exposure to graphic imagery can cause devastating psychological trauma, including PTSD.**

35.     It is well known that exposure to images of graphic violence can cause debilitating injuries, including PTSD.

36.     In a study conducted by the National Crime Squad in the United Kingdom, 76 percent of law enforcement officers surveyed reported feeling emotional distress in response to exposure to child abuse on the internet. The same study, which was co-sponsored by the United Kingdom's Association of Chief Police Officers, recommended that law enforcement agencies implement employee support programs to help officers manage the traumatic effects of exposure to child pornography.

37.     In a study of 600 employees of the Department of Justice's Internet Crimes Against Children task force, the U.S. Marshals Service found that a quarter of the cybercrime investigators surveyed displayed symptoms related to psychological trauma, including from secondary traumatic stress.

38.     Another study of cybercrime investigators from 2010 found that "greater exposure to disturbing media was related to higher levels of . . . secondary traumatic stress" and that "substantial percentages" of investigators exposed to disturbing media "reported poor

psychological well-being."

39.     The Eyewitness Media Hub has also studied the effects of viewing videos of graphic violence, including suicide bombing, and found that "40 percent of survey respondents said that viewing distressing eyewitness media has had a negative impact on their personal lives."

40.     Whereas viewing or hearing about another person's traumatic event used to be considered "secondary traumatic stress," the current Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Association, 5th ed. 2013) ("DSM-5") recognizes that secondary or indirect exposure to trauma, such as repeated or extreme exposure to aversive details of trauma through work-related media, meets the first diagnostic criterion for PTSD.

41.     It is well established that stressful work conditions, such as especially demanding job requirements or a lack of social support, reduce resilience in the face of trauma exposure and increase the risk of developing debilitating psychological symptoms.

42.     Depending on many factors, individuals who have experienced psychological trauma may develop a range of subtle to significant physical and psychological symptoms, including extreme fatigue, disassociation, difficulty sleeping, excessive weight gain, anxiety, nausea, and other digestive issues.

43.     Trauma exposure and PTSD are also associated with increased risk of chronic health problems including cardiovascular problems, strokes, pain syndromes, diabetes, epilepsy, and dementia.

44.     There is growing evidence that early identification and treatment of PTSD is important from a physical health perspective, as a number of meta-analyses have shown increased risk of cardiovascular, metabolic, and musculoskeletal disorders among patients with long-term PTSD.

45.     Psychological trauma and/or PTSD are also often associated with the onset or worsening of substance use disorders. Epidemiologic studies indicate that one-third to one-half of individuals with PTSD also have a substance use disorder. Compared to individuals without PTSD, those with PTSD have been shown to be more than twice as likely to meet the diagnostic criteria for alcohol abuse or dependence; individuals with PTSD are also three to four times more likely to meet the diagnostic criteria for drug abuse or dependence.

46.     PTSD symptoms may manifest soon after the traumatic experiences, or they may manifest later in life, sometimes months or years after trauma exposure.

47.     An individual's risk of developing PTSD or associated symptoms may be reduced through prevention measures, which include primary, secondary, or tertiary interventions. Primary interventions are designed to increase resilience and lower the risk of future PTSD among the general population. Secondary interventions are designed to lower the risk of PTSD among individuals who have been exposed to trauma, even if they are not yet showing symptoms of traumatic stress. Finally, tertiary interventions are designed to prevent the worsening of symptoms and improve functioning in individuals who are already displaying symptoms of traumatic stress, or have been diagnosed with PTSD.

48.     Individuals who develop PTSD or other mental health conditions following traumatic exposure require not only preventative measures but also treatment. Unlike prevention, treatment measures are aimed at symptom resolution and recovery from the condition.

49.     Preliminary screening is necessary to determine which types of prevention or treatment measures are most appropriate for an individual.

**C.     Facebook helped craft industry standards for minimizing harm to content moderators but failed to implement the very standards it helped create.**

50.     In 2006, Facebook helped create the Technology Coalition, a collaboration of

internet companies aiming "to develop technology solutions to disrupt the ability to use the Internet to exploit children or distribute child pornography."

51.     Facebook was a member of the Technology Coalition at all times relevant to the allegations herein.

52.     In January 2015, the Technology Coalition published an "Employee Resilience Guidebook for Handling Child Sex Abuse Images" (the "Guidebook").

53.     According to the Guidebook, the technology industry "must support those employees who are the front line of this battle."

54.     The Guidebook recommends that internet companies implement a robust, formal "resilience" program to support content moderators' well-being and mitigate the effects of exposure to trauma-inducing imagery.

55.     With respect to hiring content moderators, the Guidebook recommends:

a.      In an informational interview, "[u]se industry terms like 'child sexual abuse imagery' and 'online child sexual exploitation' to describe subject matter."

b.      In an informational interview, "[e]ncourage candidate to go to websites [like the National Center for Missing and Exploited Children] to learn about the problem."

c.      In follow-up interviews, "[d]iscuss candidate's previous experience/ knowledge with this type of content."

d.      In follow-up interviews, "[d]iscuss candidate's current level of comfort after learning more about the subject."

e.      In follow-up interviews, "[a]llow candidate to talk with employees who handle content about their experience, coping methods, etc."

f.     In follow-up interviews, "[b]e sure to discuss any voluntary and/or mandatory counseling programs that will be provided if candidate is hired."

56.    With respect to safety on the job, the Guidebook recommends:

a.     Limiting the amount of time an employee is exposed to child sexual abuse imagery;

b.     Teaching moderators how to assess their own reaction to the images;

c.     Performing a controlled content exposure during the first week of employment with a seasoned team member and providing follow up counseling sessions to the new employee;

d.     Providing mandatory group and individual counseling sessions administered by a professional with specialized training in trauma intervention; and

e.     Permitting moderators to "opt-out" from viewing child sexual abuse imagery.

57.    The Technology Coalition also recommends the following practices for minimizing exposure to graphic content:

a.     Limiting time spent viewing disturbing media to "no more than four consecutive hours;"

b.     "Encouraging switching to other projects, which will allow professionals to get relief from viewing images and comeback recharged and refreshed;"

c.     Using "industry-shared hashes to more easily detect and report [content] and in turn, limit employee exposure to these images. Hash technology allows for identification of exactly the same image previously seen and

identified as objectionable;"

    d.    Prohibiting moderators from viewing child pornography one hour before the individuals leave work; and

    e.    Permitting moderators to take time off as a response to trauma.

58. According to the Technology Coalition, if a company contracts with a third-party vendor to perform duties that may bring vendor employees in contact with graphic content, the company should clearly outline procedures to limit unnecessary exposure and should perform an initial audit of the independent contractor's wellness procedures for its employees.

59. The National Center for Missing and Exploited Children ("NCMEC") also promulgates guidelines for protecting content moderators from psychological trauma. For instance, NCMEC recommends changing the color or resolution of the image, superimposing a grid over the image, changing the direction of the image, blurring portions of the image, reducing the size of the image, and muting audio.

60. Based on these industry standards, some internet companies take steps to minimize harm to content moderators. However, Defendants do not take any of the mitigating set forth above. Cognizant did not even conduct any psychological evaluations on new employees, including Plaintiffs, to determine if they were a good fit for the job. Although there are counselors on staff, they do not provide any real counseling services. In fact, management was told to monitor how much time employees spent with counselors in order to discourage use of counseling services.

61. Content moderators review thousands of traumatic images each day through Facebook's review platforms without the benefit of these known safeguards and with little training on how to handle the resulting distress.

62. In addition, Facebook sets overarching standards relating to the timeframe for and

accuracy of review.

63.    Plaintiffs and other content moderators at the Tampa Cognizant facility face relentless pressure from their bosses to better enforce Facebook's community standards, which receive near-daily updates that leave its contractor workforce in a perpetual state of uncertainty. The Tampa site, which has been accurately referred to in the press as a "sweatshop," has routinely failed to meet the 98 percent "accuracy" target set by Facebook. With a score hovering around 92, it has been Facebook's worst-performing site in North America.

64.    In mid-2019, a "Wellness Summit" was held, where Facebook displayed the productivity statistics for its content moderator contractors. Cognizant was on the bottom of the list. After this Summit, Cognizant issued directives to begin writing up employees for lack of production and taking too much "wellness" time.

65.    Following the Wellness Summit, employees, including Plaintiffs, were being pushed hard. Employees were expected to review 300 pieces of content per day.  Employees were being written up for lack of production and taking too much "wellness" time (e.g. time to "decompress" during a shift).  These write ups were based on a directive from Cognizant, which originally came from Facebook

66.    Facebook understands that its standards impose intense pressure and stress on content moderators, and that such stress contributes to and exacerbates content moderators' risk of developing psychological trauma.

67.    As one moderator described the job:

"[The moderator] in the queue (production line) receives the tickets (reports) randomly. Texts, pictures, videos keep on flowing. There is no possibility to know beforehand what will pop up on the screen. The content is very diverse. No time is left for a mental transition. It is entirely impossible to prepare oneself psychologically. One never knows what s/he will run into. It takes sometimes a few seconds to understand what a post is about. The agent is in a continual situation of

stress. The speed reduces the complex analytical process to a succession of automatisms. The moderator reacts. An endless repetition. It becomes difficult to disconnect at the end of the eight-hour shift."

68.     Facebook also demands that its content moderation vendors, including Cognizant, require their employees to sign sweeping Non-Disclosure Agreements ("NDAs"). Facebook further requires its vendors to provide Facebook-developed training to all content moderators to instruct the moderators not to speak about the content or workplace conditions to anyone outside of their review team. By prohibiting content moderators from discussing their work or seeking outside social support, Facebook impedes the development of resiliency and increases the risk that moderators will develop psychological trauma.

69.     The results of an in-depth investigation into the dangerous working conditions at Cognizant's Tampa facility and some of the psychological harm suffered by the content moderators employed there was published in The Verge in June 2019. For further background information, please visit: https://www.theverge.com/2019/6/19/18681845/facebook-moderator-interviews-video-trauma-ptsd-cognizant-tampa and https://www.cnn.com/videos/business/2019/06/23/former-facebook-moderator-blows-the-whistle.cnn.

**D.     Plaintiffs Jeudy's individual allegations.**

70.     From approximately December 13, 2017 until the present, Plaintiff worked as a Facebook content moderator at Cognizant's offices at 7725 Woodland Center Blvd., Tampa, FL 33614.

71.     During this period, Plaintiff Jeudy was employed by Defendant Cognizant.

72.     At all times relevant to this complaint, Cognizant was an independent contractor of Facebook.

73.     Cognizant directly oversaw all human resources matters concerning Mr. Jeudy.

74.     Mr. Jeudy has never been employed by Facebook in any capacity and never received any wages or employee benefits package (e.g., wellness benefits, paid time off, parental financial assistance) from Facebook.

75.     During his employment as a content moderator, Mr. Jeudy was exposed to thousands of images, videos, and livestreamed broadcasts of graphic violence.

76.     Mr. Jeudy is paid $16 per hour. He and other content moderators receive two 15-minute breaks and a 30-minute lunch each day, along with nine minutes per day of "wellness" time that they purportedly can use when they feel overwhelmed by the emotional toll of the job.

77.     On the night of March 9, 2018, Mr. Jeudy's coworker, Keith Utley, had a heart attack and died at his desk during Mr. Jeudy's shift. Management came in and instructed everyone that they could not speak about it with anyone.  Cognizant never disclosed what Mr. Utley was watching when he died, nor did it taking any apparent mitigating steps to ensure this does not happen again to other content moderators.

78.     On March 15, 2019, two consecutive terrorist shooting attacks occurred at mosques in Christchurch, New Zealand, killing 51 people and injuring 49. The gunman, a white supremacist, live-streamed the first 17 minutes of this attack on Facebook Live.  Cognizant employees, including Mr. Jeudy, were forced to watch these horrific images over and over again due to its viral nature.  Defendants Facebook and Cognizant did not provide support after this event and failed to have trauma counselors on site.

79.     Mr. Jeudy (who is Black) was assigned to the dedicated "Hate Cue," which required that he review extreme racist and violent content, particularly against minorities. This was a "Double Review" cue, which required double review thereby requiring more time, which would have affected P's productivity due to no fault of his own.

80.     As a result of the extreme working conditions and unrelenting pressure, in July 2019, Mr. Jeudy was diagnosed with anxiety disorder and PTSD.  As a result of these impairments, Mr. Jeudy went out on a leave of absence and was scheduled to return in August.

81.     On Aug. 13, 2019, Mr. Jeudy suffered a stroke (cerebral infarction) while on leave. He also began suffering complex partial seizures and later was diagnosed with epilepsy. These disabilities impaired several major life activities, including sleeping, thinking and speaking.  It is well established that chronic psychological stress contributes to an increased risk of stroke. Furthermore, strokes are a known cause of epilepsy.  Certain factors, including stress and lack of sleep, are known to provoke seizures in people with epilepsy.  Mr. Jeudy's stoke and epilepsy were directly caused by the extreme working conditions to which he was exposed.

**E.     Plaintiffs Garrett's individual allegations.**

82.     From approximately July 2018 until the present, Plaintiff Garrett worked as a Process Executive (a/k/a Facebook Content Moderator) at Cognizant's offices at 7725 Woodland Center Blvd., Tampa, FL 33614.

83.     During this period, Plaintiff Garrett was employed by Cognizant.

84.     At all times relevant to this complaint, Cognizant was an independent contractor of Facebook.

85.     Cognizant directly oversaw all human resources matters concerning Ms. Garrett.

86.     Ms. Garrett has never been employed by Facebook in any capacity and never received any wages or employee benefits package (e.g., wellness benefits, paid time off, parental financial assistance) from Facebook.

87.     During her employment as a content moderator, Ms. Garrett was exposed to thousands of images, videos, and livestreamed broadcasts of graphic violence, including

beheadings, mutilations, terrorist killings and torture, rapes and murders.

88. As a result of the extreme working conditions and unrelenting pressure, in Fall 2018, Ms. Garrett was diagnosed with PTSD. As a result of these impairments, Ms. Garrett went out on a leave of absence in or about September 2019.

89. Plaintiffs have been required to retain the undersigned counsel to represent them in this action and are obligated to pay them a reasonable fee for their services.

90. Plaintiffs demand a jury trial on all claims.

## CLASS ACTION ALLEGATIONS

91. Plaintiffs Garrett and Jeudy bring this class action individually and on behalf of all Florida citizens who performed content moderation work for Facebook within the last three years as an employee of Cognizant.

92. The class is so numerous that joinder of all members is impracticable. Plaintiffs do not know the exact size of the class since that information is within the control of Defendants.

93. However, upon information and belief, Plaintiffs allege that the number of class members is in the thousands. Membership in the class is readily ascertainable from Defendants' records, e.g., Cognizant's employment records and/or Facebook's records relating to its contract with Cognizant or to registered users of its content review platforms.

94. Plaintiffs' claims are typical of the claims of the class, as all members of the class are similarly affected by Defendants' wrongful conduct.

95. There are numerous questions of law or fact common to the class, and those issues predominate over any question affecting only individual class members. The common legal and factual issues include the following:

a. Whether Defendants committed the violations of the law alleged herein;

b.  Whether Defendants participated in and perpetrated the tortious conduct complained of herein;

c.  Whether Plaintiffs and the class are entitled to medical monitoring;

d.  Whether Plaintiffs and the class are entitled to monetary compensation for the lost wages and medical and mental health expenses incurred as a result of the Defendants' unlawful practices.

e.  Whether Defendants should be ordered to implement and comply with industry guidelines for safety in content moderation.

96.  The claims asserted by Plaintiffs are typical of the claims of the class, in that the representative Plaintiffs, like all class members, were exposed to highly toxic, unsafe, and injurious content while providing content moderation services for Facebook. Each member of the proposed class has been similarly injured by Defendants' misconduct.

97.  Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained attorneys experienced in class actions and complex litigation. Plaintiffs intend to vigorously prosecute this litigation. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other class members.

98.  Plaintiffs and the class members have all suffered and will continue to suffer harm resulting from Defendants' wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many members of the proposed class who could not individually afford to litigate a claim such as

is asserted in this complaint. This class action likely presents no difficulties in management that would preclude maintenance as a class action.

**FIRST CAUSE OF ACTION**
**INTENTIONAL TORT – COGNIZANT**
**(Deliberate Concealment Or Misrepresentation Of Known Danger)**

99.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 98 as though fully set forth herein.

100.     Defendant Cognizant had knowledge of the known danger to Plaintiffs and the class by knowingly exposing them to highly toxic, unsafe, and injurious content while providing content moderation services for Facebook.

101.     Defendant Cognizant had knowledge of the known danger to Plaintiffs and the class based upon prior similar injuries to other workers as well as explicit warnings by industry groups specifically identifying the danger or exposing employees to highly toxic, unsafe, and injurious content while providing content moderation services that was virtually certain to cause injury to Plaintiffs and the class.

102.     Based upon these warnings, Cognizant's actions in exposing employees to highly toxic, unsafe, and injurious content while providing content moderation services was virtually certain to result in injury to Plaintiffs and the class if proper precautions were not taken.  Cognizant, despite being aware of the existence of such precautions, intentionally refused to implement such precautions.

103.     Plaintiffs and the class were not aware of the danger caused by providing content moderation services for Facebook because it was not apparent and was not disclosed to them by Cognizant.  Indeed, Cognizant prevented content moderators from discussing the dangers with new employees because they were required to sign broad NDAs.

104. Cognizant deliberately concealed and misrepresented these dangers to Plaintiffs and the class, thereby preventing them from exercising informed judgment as to whether to perform the work. Instead, Cognizant advertised the job as a prestigious career in high technology that simply required them to become knowledgeable about "leading social media products and community standards," to "assist our community and help resolve inquiries empathetically, accurately and on time," and to "make well balanced decisions and personally driven to be an effective advocate for our community."

105. Cognizant's actions in knowingly exposing Plaintiffs and the class to highly toxic, unsafe, and injurious content while providing content moderation services for Facebook caused the injury of the Plaintiffs and the class, including PTSD and other psychological disorders, physical injuries including stroke and epilepsy, and other injuries, including lost pay, lost future earning capacity, emotional distress and loss of enjoyment of life.

106. As a result of Cognizant's tortious conduct, Plaintiffs and the class are at an increased risk of developing serious mental health injuries, including, but not limited to, PTSD, as well as associated physical injuries.

107. To remedy that injury, Plaintiffs and the class need medical monitoring that provides specialized screening, assessment, and treatment not generally given to the public at large.

108. The medical monitoring regime includes, but is not limited to, baseline screening, assessments, and diagnostic examinations that will assist in diagnosing the adverse health effects associated with exposure to trauma. This screening and assessment will also inform which behavioral and/or pharmaceutical interventions are best suited to prevent or mitigate various adverse consequences of post-traumatic stress and other conditions associated with exposure to

graph imagery.

109. In particular, the medical monitoring regime includes (a) "secondary" preventative interventions, designed to reduce the risk of later onset of PTSD among class members who are not yet displaying symptoms of PTSD; (b) "tertiary" interventions, designed to reduce the worsening of symptoms among those who are experiencing symptoms associated with post-traumatic stress or have a diagnosis of PTSD; and (c) evidence-based treatments to facilitate recovery from mental health conditions.

110. Monitoring, assessing, and providing preventative interventions and/or treatment to Plaintiffs and the class will significantly reduce the risk of long-term injury, disease, and economic loss that Plaintiffs and the class suffer as a result of Cognizant's unlawful conduct.

111. Plaintiffs seek medical monitoring to facilitate the screening, diagnosis, and adequate treatment of Plaintiffs and the class for psychological trauma, including to prevent or mitigate conditions such as PTSD.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE - FACEBOOK**
**(Negligent Exercise of Retained Control)**

112. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 98 as though fully set forth herein.

113. The hirer of an independent contractor is liable for its own negligence to an employee of the contractor insofar as a hirer's exercise of retained control affirmatively contributed to the employee's injuries.

114. If an entity hires an independent contractor to complete work but retains control over any part of the work, the hiring entity has a duty to the independent contractor's employees or subcontractors to exercise that control with reasonable care.

115.     If the hiring entity negligently exercises its retained control in a manner that affirmatively contributes to the injuries of the contractor's employees or subcontractors, the hiring entity is liable for those injuries.

116.     At all times relevant to the allegations herein, Plaintiffs and class members were employees of Cognizant, an independent contractor that Facebook hired to provide content moderation services.

117.     Facebook exercised retained control over certain aspects of the work performed by Plaintiffs and the class, including:

    a.     Requiring content moderators to use Facebook-developed review platforms that presented unmitigated traumatic content to content moderators according to Facebook-developed algorithms;

    b.     Requiring that content moderators – through Cognizant—sign NDAs and undergo Facebook-developed confidentiality trainings that prohibit them from discussing their work outside their review teams; and

    c.     Setting expectations as to the overall timeframe for and accuracy of content review, calculating the amount of time it should take a content moderator to review different types of posts, and deciding the overall number of man hours required to meet the overarching timeframe and accuracy expectations.

118.     Based on its exercise of retained control, Facebook has had at all relevant times a duty to exercise reasonable care with regard to the safety of Plaintiffs and the class.

119.     Facebook negligently exercised its retained control in a manner that affirmatively contributed to the injuries of Plaintiffs and the class, including by exacerbating Plaintiffs' and class members' risks of developing PTSD or other health issues. For example:

a. Facebook failed to provide adequate technological safeguards to protect content moderators from risks associated with exposure to traumatic content via Facebook's review platforms and algorithms;

b. Facebook's NDAs and confidentiality trainings diminished content moderators' social support networks and resilience by prohibiting content moderators from speaking about the content they reviewed or other related workplace conditions to anyone outside of their review teams; and

c. By setting demanding standards for review, both in terms of quantity and quality expectations, Facebook imposed stressful work conditions that serve to further reduce content moderators' resilience to trauma.

120. Facebook was aware of the psychological trauma that could be caused by viewing video, images, and/or livestreamed broadcasts of child abuse, rape, torture, bestiality, beheadings, suicide, murder, and other forms of extreme violence through its review platforms.

121. Facebook was also aware or should have been aware that its review platforms could be made safer if proper precautions were followed; that requiring content moderators not to discuss their work or workplace conditions reduced their ability to deal with traumatic content; and that Facebook's overall quality and quantity standards had the effect of imposing intense workplace stress and, accordingly, increasing content moderators' risk of injury from psychological trauma.

122. Facebook breached its duty to Plaintiffs and the class by failing to provide the necessary and adequate technological safeguards, safety and instructional materials, warnings, social support, and other means to reduce and/or minimize the physical and psychiatric risks associated with exposure to graphic imagery through Facebook's review platform.

123. Facebook continues to breach its duty to class members by failing to exercise its

retained control with reasonable care; that breach continues to elevate class members' risks of injury from psychological trauma.

124. As a result of Facebook's tortious conduct, Plaintiffs and the class are at an increased risk of developing serious mental health injuries, including, but not limited to, PTSD, and associated physical injuries.

125. To remedy that injury, Plaintiffs and the class need medical monitoring that provides specialized screening, assessment, and treatment not generally given to the public at large.

126. The medical monitoring regime includes, but is not limited to, baseline screening, assessments, and diagnostic examinations that will assist in diagnosing the adverse health effects associated with exposure to trauma. This screening and assessment will also inform which behavioral and/or pharmaceutical interventions are best suited to prevent or mitigate various adverse consequences of post-traumatic stress and other conditions associated with exposure to graphic imagery.

127. In particular, the medical monitoring regime includes (a) "secondary" preventative interventions, designed to reduce the risk of later onset of PTSD among class members who are not yet displaying symptoms of PTSD; (b) "tertiary" interventions, designed to reduce the worsening of symptoms among those who are experiencing symptoms associated with post-traumatic stress or have a diagnosis of PTSD; and (c) evidence-based treatments to facilitate recovery from mental health conditions.

128. Monitoring, assessing, and providing preventative interventions and/or treatment to Plaintiffs and the class will significantly reduce the risk of long-term injury, disease, and economic loss that Plaintiffs and the class suffer as a result of Facebook's unlawful conduct.

129.   Plaintiffs seek medical monitoring to facilitate the screening, diagnosis, and adequate treatment of Plaintiffs and the class for psychological trauma, including to prevent or mitigate conditions such as PTSD.

**THIRD CAUSE OF ACTION**
**NEGLIGENCE - FACEBOOK**
**(Negligent Provision of Unsafe Equipment)**

130.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 98 as though fully set forth herein.

131.   An entity that hires an independent contractor to complete work is also liable to the independent contractor's employees or subcontractors if the hiring entity negligently provides unsafe equipment that contributes to a workplace injury.

132.   Facebook provided to its independent contractors the review platforms that Plaintiffs and the class were required to use to complete their work.

133.   Facebook had a duty to exercise reasonable care to furnish safe review platforms to its contractors.

134.   Facebook was aware of the psychological trauma that could be caused by viewing video, images, and/or livestreamed broadcasts of child abuse, rape, torture, bestiality, beheadings, suicide, murder, and other forms of extreme violence through its review platforms.

135.   Facebook was aware or should have been aware that its review platforms could be made safer if proper precautions were followed.

136.   Facebook nevertheless provided unsafe review tools to the contractor. The review platforms presented unmitigated traumatic content to Plaintiffs and the class.

137.   Facebook breached its duty to Plaintiffs and the class by failing to provide the necessary and adequate technological safeguards, safety and instructional materials, warnings, and

other means to reduce and/or minimize the physical and psychiatric risks associated with exposure to graphic imagery through Facebook's review platform.

138.     Facebook continues to breach its duty to class members by failing to provide a reasonably safe review platform; that breach continues to elevate class members' risks of injury from psychological trauma.

139.     As a result of Facebook's tortious conduct, Plaintiffs and the class are at an increased risk of developing serious mental health injuries, including, but not limited to, PTSD.

140.     To remedy that injury, Plaintiffs and the class need medical monitoring that provides specialized screening, assessment, and treatment not generally given to the public at large.

141.     The medical monitoring regime includes, but is not limited to, baseline screening, assessments, and diagnostic examinations that will assist in diagnosing the adverse health effects associated with exposure to trauma. This screening and assessment will also inform which behavioral and/or pharmaceutical interventions are best suited to prevent or mitigate various adverse consequences of post-traumatic stress and other conditions associated with exposure to graphic imagery.

142.     In particular, the medical monitoring regime includes (a) "secondary" preventative interventions, designed to reduce the risk of later onset of PTSD among class members who are not yet displaying symptoms of PTSD; (b) "tertiary" interventions, designed to reduce the worsening of symptoms among those who are experiencing symptoms associated with post-traumatic stress or have a diagnosis of PTSD; and (c) evidence-based treatments to facilitate recovery from mental health conditions.

143.     Monitoring, assessing, and providing preventative interventions and/or treatment

to Plaintiffs and the class will significantly reduce the risk of long-term injury, disease, and economic loss that Plaintiffs and the class suffer as a result of Facebook's unlawful conduct.

144.    Plaintiffs seek medical monitoring to facilitate the screening, diagnosis, and adequate treatment of Plaintiffs and the class for psychological trauma, including to prevent or mitigate conditions such as PTSD.

**THIRD CAUSE OF ACTION**
**FDUTPA – BOTH DEFENDANTS**

145.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 98 as though fully set forth herein.

146.    Section 501.204(1) of the Florida Statutes provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The provisions of the Act shall be "construed liberally to promote the protection" of the "consuming public and legitimate business enterprises from those who engage in … deceptive[] or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

147.    Defendants were, at all times material to the allegations herein, engaged in "trade or commerce" as defined by the Section 501.203.

148.    Plaintiffs are "persons" within the meaning of Fla. Stat. § 501.211.

149.    Defendants engaged in unfair or deceptive acts or practices in the conduct of their trade or commerce by:

> (1)    Knowingly exposing Plaintiffs and the class to highly toxic, unsafe, and injurious content while providing content moderation services for Facebook;

> (2)    Concealing the known danger to Plaintiffs and the class, of which Defendants were aware based upon prior similar injuries to other workers

as well as explicit warnings by industry groups specifically identifying the danger or exposing employees to highly toxic, unsafe, and injurious content while providing content moderation services that was virtually certain to cause injury to Plaintiffs and the class;

(3)     Refusing, despite the known risks, to implement proper precautions to protect Plaintiffs and the class from the known dangers of being exposed to highly toxic, unsafe, and injurious content while providing content moderation services;

(4)     Preventing Plaintiffs and the class from becoming aware of the scope of the danger caused by providing content moderation services for Facebook by, *inter alia*, forcing Plaintiffs and the class to sign broad NDAs and preventing them from discussing the dangers with new employees or other persons;

(5)     By deliberately concealing and misrepresenting these dangers to Plaintiffs and the class by, *inter alia*, falsely advertising the job as a prestigious career in high technology that simply required them to become knowledgeable about "leading social media products and community standards," to "assist our community and help resolve inquiries empathetically, accurately and on time," and to "make well balanced decisions and personally driven to be an effective advocate for our community"; and

(6)     Shutting down Cognizant's Tampa office in February 2020, laying off its workforce and leaving content moderators, including Plaintiffs and the class, with no means of obtaining requisite ongoing medical monitoring,

screening, diagnosis, or adequate treatment after suffering psychological trauma during their employment.

150.     Defendants' unfair or deceptive acts or practices caused the injury of the Plaintiffs and the class, including PTSD and other psychological disorders, physical injuries including stroke and epilepsy, and other injuries, including lost pay, lost future earning capacity, emotional distress and loss of enjoyment of life.

151.     Defendants knew or should have known that their conduct was unfair or deceptive.

152.     Defendants willfully used the aforestated unfair or deceptive acts or practices to victimize persons with disabilities, including PTSD and other psychological disorders, and therefore are liable for a civil penalty of not more than $15,000 for each such violation pursuant to Fla. Stat. § 501.2077.

153.     Pursuant to Fla. Stat. § 501.211, Plaintiffs and the class are entitled to the following relief: (1) a declaratory judgment that Defendants' actions constitute unfair or deceptive acts or practices; (2) an order enjoining Defendants from continuing to violate the law; (3) actual damages; (4) attorney's fees and court costs as provided in Fla. Stat. § 501.2105.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the class, requests that the Court:

a.     Certify this action as a class action, with a class as defined above;

b.     Find that Plaintiffs are proper representatives of the class, and appoint the undersigned as class counsel;

c.     Order Defendants to pay for notifying class members of the pendency of this suit;

d.     Order Defendants to create a medical monitoring fund for the benefit of Plaintiffs and the class;

e.     Award declaratory and injunctive relief as is necessary to protect the interests of
Plaintiffs and class members, including by enjoining Defendants from continuing
to conduct business through the unlawful and unfair practices alleged herein,
ordering Defendants to implement safety guidelines for all prospective content
moderation operations in Florida, and ordering Defendants to establish a fund to
pay for a medical monitoring program, to facilitate the ongoing screening,
diagnosis, and adequate treatment of Plaintiffs and the class for psychological
trauma including to prevent or mitigate conditions such as PTSD – until it can be
determined that psychological trauma is no longer a threat to their health;

f.     Award Plaintiffs and class members actual and compensatory damages, including
but not limited to lost pay, medical expenses, lost future earning capacity,
emotional distress and loss of enjoyment of life;

g.     Award Plaintiffs and class members their reasonable litigation expenses and
attorneys' fees pursuant to applicable law, including but not limited to Fla. Stat. §
501.2105; and

h.     Award any further relief that the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby request trial by jury.

Dated: February 5, 2020

Respectfully submitted,

*/s/ Jay P. Lechner*
**LECHNER LAW**
Jay P. Lechner, Esq.
Florida Bar No.: 0504351
Jay P. Lechner, P.A.
Fifth Third Center

201 E. Kennedy Blvd., Suite 412
Tampa, Florida 33602
Telephone: (813) 842-7071
jplechn@jaylechner.com
shelley@jaylechner.com
*Attorneys for Plaintiff*

**IN THE THIRTEENTH JUDICIAL CIRCUIT OF THE
STATE OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY**

DEBRYNNA GARRETT and CLIFFORD JEURY,

individually and on behalf of all others similarly situated

Plaintiff/Petitioner(s)

CASE NO.: _____

DIVISION: _____

vs.

FACEBOOK, INC., and COGNIZANT

BUSINESS SERVICES CORPORATION,

Defendant/Respondent(s)

# REQUEST FOR DIVISION ASSIGNMENT

**This is a request based on local Administrative Order(s) for the Clerk of the Court to assign the above styled case in the:**

☑ **Tampa Division**

☐ **East Division**

☐ **Prior Division (Please indicate Case Number and Division of previously filed action: _____ )**

**I understand that the actual division assignment will be in accordance with the Hillsborough County Administrative Orders. If there is no supported request for specific division assignment, this action will be assigned a division based on a random and equitable distribution system.**

**Name of Attorney:** Jay P. Lechner

**Address:** 201 E. Kennedy Blvd., Suite 412

Tampa, FL 33602

**Phone Number:** (813) 842-7071

**Email Address(es):** jplechn@jaylechner.com and shelley@jaylechner.com

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**
**CIRCUIT CIVIL DIVISION**

DEBRYNNA GARRETT and CLIFFORD
JEURY, individually and on behalf of all
others similarly situated,

        Plaintiffs,

v.                                      Case No.:

FACEBOOK, INC., and COGNIZANT
BUSINESS SERVICES CORPORATION,

        Defendants.

_____/

<b>SUMMONS</b>

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:

    **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on:

    COGNIZANT BUSINESS SERVICES CORPORATION
    c/o CT Corporation System, Registered Agent
    1200 S. Pine Island Road
    Plantation, FL 33324

    Each defendant is required to serve written defenses to the complaint or petition on **Jay P. Lechner c/o Lechner Law, 201 E. Kennedy Blvd., Suite 412, Tampa, FL 33602** within 20[1] days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED this _____ day of February, 2020**

                                  **PAT FRANK**
                                  As Clerk of the Court

                                  By: _____
                                    As Deputy Clerk
                                    800 E. Twiggs St., Room 101, Tampa, FL
                                    33602 - (813) 276-8100

Jay P. Lechner, P.A.
Fifth Third Center
201 E. Kennedy Blvd., Suite 412
Tampa, Florida 33602
Telephone: (813) 842-7071
jplechn@jaylechner.com
shelley@jaylechner.com
*Attorneys for Plaintiff*

---

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the documents.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 días, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, deberá usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con el Coordinador de ADA, Hillsborough County Courthouse, 800 E. Twiggs St., Sala 604, Tampa, Florida 33602, (813) 272-7040, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.**

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**
**CIRCUIT CIVIL DIVISION**

DEBRYNNA GARRETT and CLIFFORD
JEURY, individually and on behalf of all
others similarly situated,

        Plaintiffs,

v.                                    Case No.:

FACEBOOK, INC., and COGNIZANT
BUSINESS SERVICES CORPORATION,

        Defendants.

_____/

## SUMMONS

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:

        **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on:

        FACEBOOK, INC.
        c/o Corporation Service Company, Registered Agent
        1201 Hays Street
        Tallahassee, FL 32301-2525

        Each defendant is required to serve written defenses to the complaint or petition on **Jay P. Lechner c/o Lechner Law, 201 E. Kennedy Blvd., Suite 412, Tampa, FL 33602** within 20[1] days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

        **DATED this ____ day of February, 2020**

                                    **PAT FRANK**
                                    As Clerk of the Court

                                  By: _____
                                  As Deputy Clerk
                                  800 E. Twiggs St., Room 101, Tampa, FL
                                  33602 - (813) 276-8100

Jay P. Lechner, P.A.
Fifth Third Center
201 E. Kennedy Blvd., Suite 412
Tampa, Florida 33602
Telephone: (813) 842-7071
jplechn@jaylechner.com
shelley@jaylechner.com
*Attorneys for Plaintiff*

---

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the documents.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711**.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 días, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con el Coordinador de ADA, Hillsborough County Courthouse, 800 E. Twiggs St., Sala 604, Tampa, Florida 33602, (813) 272-7040, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.**

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**
**CIRCUIT CIVIL DIVISION**

DEBRYNNA GARRETT and CLIFFORD
JEURY, individually and on behalf of all
others similarly situated,

        Plaintiffs,

v.                               Case No.:  **20-CA-1146**   **DIV B**

FACEBOOK, INC., and COGNIZANT
BUSINESS SERVICES CORPORATION,

        Defendants.

_____/

**SUMMONS**

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:

    **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on:

    COGNIZANT BUSINESS SERVICES CORPORATION
    c/o CT Corporation System, Registered Agent
    1200 S. Pine Island Road
    Plantation, FL 33324

    Each defendant is required to serve written defenses to the complaint or petition on **Jay P. Lechner c/o Lechner Law, 201 E. Kennedy Blvd., Suite 412, Tampa, FL 33602** within 20[1] days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED this** 10th **day of February, 2020**

                                **PAT FRANK**
                                As Clerk of the Court

                                By: _____
                                As Deputy Clerk
                                800 E. Twiggs St., Room 101, Tampa, FL
                                33602 - (813) 276-8100

Jay P. Lechner, P.A.
Fifth Third Center
201 E. Kennedy Blvd., Suite 412
Tampa, Florida 33602
Telephone: (813) 842-7071
jplechn@jaylechner.com
shelley@jaylechner.com
*Attorneys for Plaintiff*

---

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

**<u>IMPORTANT</u>**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the documents.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

**<u>IMPORTANTE</u>**

Usted ha sido demandado legalmente. Tiene 20 días, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con el Coordinador de ADA, Hillsborough County Courthouse, 800 E. Twiggs St., Sala 604, Tampa, Florida 33602, (813) 272-7040, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.**

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**
**CIRCUIT CIVIL DIVISION**

DEBRYNNA GARRETT and CLIFFORD
JEURY, individually and on behalf of all
others similarly situated,

        Plaintiffs,

v.                              Case No.:  **20-CA-1146    DIV B**

FACEBOOK, INC., and COGNIZANT
BUSINESS SERVICES CORPORATION,

        Defendants.

_____/

**SUMMONS**

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:

        **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on:

        FACEBOOK, INC.
        c/o Corporation Service Company, Registered Agent
        1201 Hays Street
        Tallahassee, FL 32301-2525

        Each defendant is required to serve written defenses to the complaint or petition on **Jay P. Lechner c/o Lechner Law, 201 E. Kennedy Blvd., Suite 412, Tampa, FL 33602** within 20[1] days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED this** 10th **day of February, 2020**

                                  **PAT FRANK**
                                  As Clerk of the Court

                                  By: _____
                                  As Deputy Clerk
                                  800 E. Twiggs St., Room 101, Tampa, FL
                                  33602 - (813) 276-8100

Jay P. Lechner, P.A.
Fifth Third Center
201 E. Kennedy Blvd., Suite 412
Tampa, Florida 33602
Telephone: (813) 842-7071
jplechn@jaylechner.com
shelley@jaylechner.com
*Attorneys for Plaintiff*

---

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the documents.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711**.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 días, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con el Coordinador de ADA, Hillsborough County Courthouse, 800 E. Twiggs St., Sala 604, Tampa, Florida 33602, (813) 272-7040, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.**

## RETURN OF SERVICE

State of Florida             County of Hillsborough             Circuit Court

Case Number: 20 CA 1146 DIV B

Plaintiff:
**DEBRYNNA GARRETT and CLIFFORD JEURY**

vs.

Defendant:
**FACEBOOK INC and COGINZANT BUSINESS SERVICES CORPORATION**

For:
Jay P Lechner, Esquire
Lechner Law
201 E Kennedy Blvd
Suite 412
Tampa, FL 33602

Received by VENTURE INVESTIGATIONS & PROCESS SERVICES INC. on the 11th day of February, 2020 at 8:35 am to be served on **COGNIZANT BUSINESS SERVICES CORPORATION C/O CT CORPORATION SYSTEM, 1200 SOUTH PINE ISLAND ROAD, PLANTATION, FL 33324.**

I, CHRIS YEOMAN, do hereby affirm that on the **11th day of February, 2020** at **3:55 pm, I:**

SERVED the within named corporation by delivering a true copy of the **SUMMONS, CLASS ACTION COMPLAINT, DEMAND FOR JURY TRIAL** at the address of **1200 SOUTH PINE ISLAND ROAD, PLANTATION, FL 33324** with the date and hour endorsed thereon by me to, **TONYA MOCK, INTAKE SPECIALIST** as an employee of the Registered Agent listed with the Florida Division of Corporation, pursuant to F.S. 48.081 (3)(a).

**Description** of Person Served: Age: 45, Sex: F, Race/Skin Color: BLACK, Height: 5'8, Weight: 130, Hair: BLACK, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Special Process Server, in good standing, in the judicial circuit in which the process was served and have proper authority in the jurisdiction in which this service was made. Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true, to the best of my knowledge and belief F.S. 92.525 Verification of documents.

CHRIS YEOMAN
SPS #262

**VENTURE INVESTIGATIONS & PROCESS
SERVICES INC.**
P.O. Box 1132
Oldsmar, FL 34677-1132
(727) 771-9112

Our Job Serial Number: WPI-2020000828
Ref: GARRETT

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1g



## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
## CIRCUIT CIVIL DIVISION

DEBRYNNA GARRETT and CLIFFORD
JEURY, individually and on behalf of all
others similarly situated,

      Plaintiffs,

v.                               Case No.:  **20-CA-1146**   **DIV B**

FACEBOOK, INC., and COGNIZANT
BUSINESS SERVICES CORPORATION,

      Defendants.

_____/

### SUMMONS

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:

      **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on:

      COGNIZANT BUSINESS SERVICES CORPORATION
      c/o CT Corporation System, Registered Agent
      1200 S. Pine Island Road
      Plantation, FL 33324

      Each defendant is required to serve written defenses to the complaint or petition on **Jay P. Lechner c/o Lechner Law, 201 E. Kennedy Blvd., Suite 412, Tampa, FL 33602** within 20[1] days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

      **DATED this** 10th **day of February, 2020**

                             **PAT FRANK**
                             As Clerk of the Court

                             By: _V Phillips_
                             As Deputy Clerk
                             800 E. Twiggs St., Room 101, Tampa, FL
                             33602 - (813) 276-8100

Jay P. Lechner, P.A.
Fifth Third Center
201 E. Kennedy Blvd., Suite 412
Tampa, Florida 33602
Telephone: (813) 842-7071
jplechn@jaylechner.com
shelley@jaylechner.com
*Attorneys for Plaintiff*

---

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

do so, a default will be entered against that defendant for the relief demanded in the complaint.

DATED on ~~January 27,~~ , 2020.

(SEAL)

By ~~Michele Cooper~~
Deputy Clerk

## RETURN OF SERVICE

State of Florida             **County of Hillsborough**           **Circuit Court**

Case Number: 20 CA 1146 DIV B

Plaintiff:
**DEBRYNNA GARRETT and CLIFFORD JEURY**

vs.

Defendant:
**FACEBOOK INC and COGINZANT BUSINESS SERVICES CORPORATION**

WPI2020000827

For:
Jay P Lechner, Esquire
Lechner Law
201 E Kennedy Blvd
Suite 412
Tampa, FL 33602

Received by Venture Investigations & Process Service on the 11th day of February, 2020 at 8:32 am to be served on
**FACEBOOK INC C/O CORPORATION SERVICE COMPANY, 1201 HAYS STREET, TALLAHASSEE, FL 32301.**

I, Christopher Compton, do hereby affirm that on the **11th day of February, 2020** at **12:20 pm, I:**

SERVED the within named corporation by delivering a true copy of the SUMMONS, CLASS ACTION COMPLAINT,
DEMAND FOR JURY TRIAL with the date and hour of service endorsed thereon by me to: SARA LEA as employee of
the Registered Agent (Company) for FACEBOOK INC at 1201 HAYS STREET, TALLAHASSEE, FL 32301 and
informed said person of the contents therein, pursuant to F.S. 48.081

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good
standing, in the Second Judicial Circuit in which the process was served. Under penalty of perjury I declare I have read
the foregoing documents and that the facts stated in it are true. Notary not required pursuant to FL Statute 92.525 Sec
(2).

**Christopher Compton**
Certified Process Server # 101

**Venture Investigations & Process Service**
P O Box 1132
Oldsmar, FL 34677-1132
**(877) 771-9112**

Our Job Serial Number: WPI-2020000827
Ref: GARRETT

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.0n

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**
**CIRCUIT CIVIL DIVISION**

DEBRYNNA GARRETT and CLIFFORD
JEURY, individually and on behalf of all
others similarly situated,

        Plaintiffs,

v.                           Case No.:  **20-CA-1146**   **DIV B**

FACEBOOK, INC., and COGNIZANT
BUSINESS SERVICES CORPORATION,

        Defendants.

_____/

*2-11-20*
*1220p*
*CC#101*

**SUMMONS**

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:

    **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on:

        FACEBOOK, INC.
        c/o Corporation Service Company, Registered Agent
        1201 Hays Street
        Tallahassee, FL 32301-2525

    Each defendant is required to serve written defenses to the complaint or petition on **Jay P. Lechner c/o Lechner Law, 201 E. Kennedy Blvd., Suite 412, Tampa, FL 33602** within 20[1] days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED this** 10th **day of February, 2020**

                          **PAT FRANK**
                          As Clerk of the Court

                          By: _V Phillips_____
                          As Deputy Clerk
                          800 E. Twiggs St., Room 101, Tampa, FL
                          33602 - (813) 276-8100

Jay P. Lechner, P.A.
Fifth Third Center
201 E. Kennedy Blvd., Suite 412
Tampa, Florida 33602
Telephone: (813) 842-7071
jplechn@jaylechner.com
shelley@jaylechner.com
*Attorneys for Plaintiff*

_____

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION**

DEBRYNNA GARRETT, ALEXANDER C.
ROBERTS, TIMOTHY DIXON, JR., KONICA
RITCHIE, JESSICA YOUNG, LAMOND RICHARDSON,
ANGELA CANSINO, JOHNNY OLDEN,
KATRINA EVANS, DANIEL WALKER, TODD
ALEXANDER, ELTON GOULD, LAMEKA
DOTSON, NICHOLAS COLLINS, REMEAL
EUANKS, TANIA PAUL, GABRIELLE MURRELL,
COURTNEY NELSON, individually and on behalf
of all others similarly situated,

        Plaintiffs,

v.                              Case No.  20-CA-001146

FACEBOOK, INC. and COGNIZANT
TECHNOLOGY SOLUTIONS U.S.
 CORPORATION,
           Defendants.
_____/

**DEFENDANT COGNIZANT TECHONOLOGY SOLUTIONS U.S.
CORPORATION'S NOTICE OF FILING NOTICE OF REMOVAL**

      Defendant Cognizant Technology Solutions U.S. Corporation ("Cognizant") hereby gives

notice that it has filed a Notice of Removal of this action to the United State District Court for the

Middle District of Florida, Tampa Division. A true and correct copy of the Notice of Removal

(without exhibits) that is being filed concurrently with this Notice is attached as Exhibit A.

Dated: March 12, 2020

Respectfully submitted,

*s/ Dennis P. Waggoner*
Dennis P. Waggoner (FBN 509426)
dennis.waggoner@hwhlaw.com
Joshua C. Webb (FBN 051679)
josh.webb@hwhlaw.com
Tori C. Simmons (FBN 107081)
tori.simmons@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Boulevard, Suite 3700
Tampa, FL 33602
Telephone: 813-221-3900
Facsimile: 813-221-2900

*Attorneys for Defendant Cognizant
Technology Solutions U.S. Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 12, 2020, I caused the foregoing to be filed with the

Clerk of the Court, and that a copy of the foregoing was served via the Florida Courts e-Filing

Portal, which will send notice of electronic filing and service to all counsel of record in this

proceeding.

*s/ Dennis P. Waggoner*
*Attorney*

DEBRYNNA GARRETT, ALEXANDER C. ROBERTS,
TIMOTHY DIXON, JR., KONICA RITCHIE,
JESSICA YOUNG, LAMOND RICHARDSON,
ANGELA CANSINO, JOHNNY OLDEN,
KATRINA EVANS, DANIEL WALKER,
TODD ALEXANDER, ELTON GOULD,
LAMEKA DOTSON, NICHOLAS COLLINS,
REMEAL EUBANKS, TANIA PAUL,
GABRIELLE MURRELL, COURTNEY NELSON,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.                                Case No.

FACEBOOK, INC. and COGNIZANT
TECHNOLOGY SOLUTIONS U.S.
CORPORATION,

      Defendants.

_____/

## DEFENDANT COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION

      Defendant Cognizant Technology Solutions U.S. Corporation ("Cognizant"), pursuant to

28 U.S.C. §§ 1332, 1441, and 1446, hereby removes this action from the Circuit Court of the

Thirteenth Judicial Circuit in and for Hillsborough County, Florida to the United States District

Court for the Middle District of Florida, Tampa Division. Removal is proper because this Court

has subject matter jurisdiction over this putative class action pursuant to the Class Action Fairness

Act ("CAFA"). In addition, Cognizant has satisfied all procedural grounds for removal.

**Background**

1.     Plaintiffs Debrynna Garrett and Clifford Jeury filed a "Class Action Complaint and Demand for Jury Trial" styled *Debrynna Garrett and Clifford Jeudy, individually and on behalf of all others similarly situated, v. Facebook, Inc., and Cognizant Business Services Corporation*, Case No. 20-CA-001146, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida on February 5, 2020.

2.     The summons and Complaint were served on Cognizant on February 11, 2020.

3.     On March 7, 2020, Plaintiffs filed and served an Amended Class Action Complaint and Demand for Jury Trial.

4.     The Amended Complaint named additional Plaintiffs and expanded the class definition. (Compl. p.1 & ¶ 91).[1]

5.     Cognizant employs moderators that review Facebook content. (Compl. ¶ 19). Content moderators remove online material that violates the terms of use for social networking sites or applications. (Compl. ¶ 20). Plaintiffs are content moderators. (Compl. ¶ 1).

6.     Plaintiffs have sued Cognizant based on the theory that Cognizant's employment of Plaintiffs as content moderators knowingly caused Plaintiffs and other class members to suffer significant psychological trauma and PTSD. (Compl. ¶¶ 3).

7.     Plaintiffs seek to represent a class comprised of all Florida and Arizona citizens who performed content moderation work for Facebook within the last three years as an employee of Cognizant. (Compl. ¶ 91.)

8.     The Amended Complaint alleges claims for (1) intentional tort – deliberate concealment or misrepresentation of known danger; (2) negligence – negligent exercise of retained

---

[1] The Amended Complaint correctly identified Cognizant as Cognizant Technology Solutions U.S. Corporation. In addition, Clifford Jeudy was not included as a named Plaintiff in the Amended Complaint.

control; (3) negligence – negligent provision of unsafe equipment; and (4) Florida Deceptive and Unfair Trade Practices Act (FDUTPA). (Compl. pp. 20, 23, 26, 29).

9.      To remedy the claims, the Amended Complaint seeks (1) a medical monitoring fund for the benefit of Plaintiffs and class members; (2) declaratory and injunctive relief to protect Plaintiffs and class members from the conduct alleged in the Amended Complaint; (3) actual and compensatory damages, including but not limited to lost pay, medical expenses, lost future earning capacity, emotional distress and loss of enjoyment of life; (4) reasonable litigation expenses and attorney's fees (under FDUTPA and otherwise). (Compl. Prayer for Relief, p. 31-32).

## Jurisdiction under the Class Action Fairness Act

10.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(d) because (1) there are 100 or more members in Plaintiffs' proposed class; (2) there is minimal diversity of citizenship; and (3) the claims of the proposed class members exceed the sum or value of $5,000,000 in the aggregate. *See Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 911-12 (11th Cir. 2014).

**A.  The Proposed Class Exceeds 100 Members.**

11.      In the Amended Complaint, Plaintiffs allege that the number of class members is in the thousands. (Compl. ¶ 93.).

12.      Based on Plaintiffs' allegations, Cognizant states that the putative class proposed by Plaintiffs includes 3,042 persons.  (See Declaration of Melissa Koehler, attached as Exhibit A).

13.      The proposed class easily exceeds the 100 members required under 28 U.S.C. § 1332(d)(5)(B).

**B.  The Minimal Diversity Requirement is Satisfied.**

14.      The class members are citizens of the States of Florida and Arizona. (Compl. ¶ 91)

15.     Cognizant is a publicly traded corporation incorporated under the laws of Delaware, with its headquarters located at 211 Quality Circle College Station, TX 77845.

16.     Facebook is a publicly traded corporation incorporated under the laws of Delaware, with its headquarters located at 1601 Willow Road, Menlo Park, California, 94025. (Compl. ¶ 18).

17.     Because Cognizant and Facebook are citizens of states other than Florida and Arizona, minimal diversity exists. 28 U.S.C. 1332(d)(2)(A).

**C.  The Amount in Controversy Requirement is Satisfied.**

18.     CAFA confers federal subject matter jurisdiction over qualifying class actions where the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). The claims of the individual class members are aggregated to determine whether the amount in controversy exceeds $5,000,000. See *id.*

19.     The Amended Complaint does not assign a dollar amount to the relief sought by Plaintiffs and the putative class members, but the Complaint includes requests for damages and medical monitoring. (Compl. ¶¶ 111, 129, 144, 150, 152, 153).

20.     The Supreme Court has held that a notice of removal "need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

21.     In addition to reviewing the available evidence, this Court may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" to determine whether the amount in controversy has been met. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).  The amount in controversy requirement may be satisfied when it is "facially apparent" from the complaint, "even 'when the complaint does not claim a specific amount of damages.'"

*Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (applying CAFA)).

22.     The Amended Complaint alleges that the class members suffered PTSD and other psychological disorders, physical injuries including stroke and epilepsy, lost pay, lost future earning capacity, emotional distress and loss of enjoyment of life. (Compl. ¶ 150).

23.     Plaintiffs also allege that employees sustained severe physical injuries, such as a heart attack, while on the job. (Compl. ¶ 75).

24.     While Cognizant will show that Plaintiffs should take nothing on their alleged claims, based on the factual allegations in the Amended Complaint, the amount in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as required under 28 U.S.C. § 1332(d)(2). Compensating 3,042 class members for the alleged damages from physiological disorders, physical injuries, lost pay, and lost future earnings would certainly exceed $5,000,000. With 3,042 putative class members, damages as low as $1,625 per class member exceeds the $5,000,000 requirement for CAFA jurisdiction.

25.     In addition to claiming these damages, Plaintiffs seek medical monitoring for the class members. The cost of medical monitoring can likewise be included in examining the amount in controversy for removal under CAFA. *Jovine v. Abbott Labs., Inc.*, 2011 WL 1337204, at *5 (S.D. Fla. Apr. 7, 2011), *see also DeHart v. BP Am.,* 2010 WL 231744, at *9 (W.D. La. Jan. 14, 2010) (finding CAFA amount in controversy satisfied where a class of 118 potential plaintiffs sought damages for severe and possibly disabling physical, mental and emotional injuries associated with alleged exposure to airborne radiation exposure, including damages for diagnostic studies and future medical monitoring).

26.     Here, the medical monitoring requested by Plaintiffs includes (1) baseline screening, assessments, and diagnostic examinations to assist in diagnosing adverse health effects, (2) secondary interventions to reduce the risks of PTSD, (3) tertiary interventions to reduce symptoms of those suffering from PTSD, and (4) evidence based treatments to help individuals recovery. (Compl. ¶¶ 108, 109, 126, 127, 141, 142).

27.     Screening for PTSD or other traumatic brain injuries requires the initial cost of an evaluation for each patient.  Treatment for PTSD can run in the thousands of dollars per patient. In February 2012, the Congressional Budget Office evaluated the cost of treating veterans for PTSD and other traumatic brain injuries. The average cost of treating PTSD per patient for one year was $8,300. The average cost of treating traumatic brain injuries for one year was $11,700. Subsequent years ranged from ($3,800 a year to $11,100 a year). (*See* Congressional Budget Office Report, attached as Exhibit B).

28.     Given that the gravamen of Plaintiffs' Amended Complaint is that Cognizant created a working environment causing PTSD and traumatic brain injuries to the putative class of 3,042 persons, it is self-evident that there is at least $5,000,000.00 at issue based on the allegations of the Amended Complaint. (Compl. ¶ 3, "As a result of constant and unmitigated exposure to highly toxic and extremely disturbing images through Facebook's content review systems, Plaintiffs and other class members developed and suffer from significant psychological trauma and/or post-traumatic stress disorder (PTSD)").

29.     Moreover, Plaintiffs' Motion for Class Certification states that "all Plaintiffs and other class members developed and suffer from significant psychological trauma, including PTSD, as a result of their constant and unmitigated exposure".  (*See* Plaintiffs' Motion for Class Certification at p. 6, attached as Exhibit C).

30.     Even making the conservative assumption that each putative class member only has to be treated for PTSD (rather than the higher cost of treating a traumatic brain injury), the cost of treatment for one year alone for the entire class of 3042 Plaintiffs would exceed the $5,000,000 jurisdictional requirement.

31.     The costs associated with screening for and treating PTSD and traumatic brain injuries, coupled with actual damages alleged, exceeds CAFA's $5,000,000 requirement.

32.     Plaintiffs also have sought attorney's fees and court costs under Florida Statute § 501.2105 for Deceptive and Unfair Trade Practices.

33.     Where attorney's fees are allowed by statute, a court can consider attorney's fees in determining the amount in controversy. *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1079-80 (11th Cir. 2000), *Lee-Bolton v. Koppers Inc.*, 848 F. Supp. 2d 1342, 1356 (N.D. Fla. 2011).

34.      Considering the complex nature of this action and the number of individuals involved, Plaintiffs' requested attorney's fees could easily exceed $250,000 and potentially approach $1 million by the time of trial.

35.     The inclusion of attorney's fees further supports that the amount in controversy is in excess of $5,000,000, demonstrating that CAFA's amount in controversy requirement is satisfied.

36.     Based on the litany of injuries and related requests for relief alleged in the Amended Complaint, using its judicial experience and common sense, the Court should find it is facially apparent from the Amended Complaint that Plaintiffs' alleged claims, which include allegations of damages from physiological disorders, physical injuries, lost pay, and lost future earnings, requests for medical monitoring to address PTSD and traumatic brain injuries, as well as a request

for substantial attorney's fees, involve an amount in controversy that exceeds CAFA's jurisdictional threshold.

## Procedural Compliance

37.     This Notice of Removal is timely because Cognizant filed its Notice of Removal within 30 days of receipt of a copy of the Complaint on February 11, 2020.  28 U.S.C. § 1446(b).

38.     Removal to the Tampa Division of this Court is proper because this action was originally filed in the state court in Hillsborough, Florida. 28 U.S.C. §§ 1441(a); M.D. Fla. L.R. 1.02(b)(4).

39.     As required by 28 U.S.C. § 1446(a) and Local Rule 4.02(b), true and correct copies of all of the process, pleadings, orders and papers on file with the state court in this action are being filed with this Notice of Removal.

40.     Pursuant to 28 U.S.C. § 1446(d), notice of this Notice of Removal is being provided to Plaintiff and the state court clerk contemporaneously with the filing of this Notice of Removal with this Court.

41.     By this Notice of Removal, Cognizant does not waive any objection it may have as to service, jurisdiction, or any other defenses or objections it may have to this action. Cognizant intends no admission of fact, law, or liability by this Notice of Removal, and expressly reserves all defenses, motions and/or pleas.

## CONCLUSION

Defendant Cognizant Technology Services U.S. Corporation hereby removes this action from the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida to this Court. Removal to this Court is appropriate because the Court has subject matter jurisdiction in this action in accordance with the provisions of CAFA.

Dated: March 12, 2020

Respectfully submitted,

*s/ Dennis P. Waggoner*
Dennis P. Waggoner (FBN 509426)
dennis.waggoner@hwhlaw.com
Joshua C. Webb (FBN 051679)
josh.webb@hwhlaw.com
Tori C. Simmons (FBN 107081)
tori.simmons@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Boulevard, Suite 3700
Tampa, FL  33602
Telephone:  813-221-3900
Facsimile:  813-221-2900

*Attorneys for Defendant Cognizant*
*Technology Solutions U.S. Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 12, 2020, I caused the foregoing to be filed with the

Clerk of the Court, and that a copy of the foregoing is being furnished by U.S. Mail and e-mail to

counsel for Plaintiffs Jay P. Lechner, jplechn@jaylechner.com, shelley@jaylechner.com , Lechner

Law, Fifth Third Center, 201 E. Kennedy Blvd., Suite 412, Tampa, Florida 33602; and Counsel

for Defendant Facebook, Gregory A. Hearing, Gregory.hearing@gray-robinson,com;

michelle.mcleod@gray-robinson.com, 401 East Jackson Street, Suite 2700, Tampa, Florida

33602.

*s/ Dennis P. Waggoner*
*Attorneys for Defendant Cognizant*
*Technology Solutions U.S. Corporation*