UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBRYNNA GARRETT, ALEXANDER C. ROBERTS,
TIMOTHY DIXON, JR., KONICA RITCHIE,
JESSICA YOUNG, LAMOND RICHARDSON,
ANGELA CANSINO, JOHNNY OLDEN,
KATRINA EVANS, DANIEL WALKER,
TODD ALEXANDER, ELTON GOULD,
LAMEKA DOTSON, NICHOLAS COLLINS,
REMEAL EUBANKS, TANIA PAUL,
GABRIELLE MURRELL, COURTNEY NELSON,
Individually and on behalf of all others similarly
situated,

       Plaintiffs,

       v.

FACEBOOK, INC., and COGNIZANT
TECHNOLOGY SOLUTIONS U.S. CORPORATION,

       Defendants.

_____/

No.: 8:20-cv-00585-T-35CPT

**DISPOSITIVE MOTION**

## DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Defendant Facebook, Inc. ("Facebook") moves to dismiss all of Plaintiffs' claims against Facebook—for alleged negligent exercise of retained control, negligent provision of unsafe equipment, and purported violation of the Florida Deceptive and Unfair Trade Practices Act— because Plaintiffs fail to state a cause of action upon which relief may be granted, Fed. R. Civ. P. 12(b)(6), and because the Court lacks personal jurisdiction over Facebook with respect to the claims of the Arizona Plaintiffs, Fed. R. Civ. P. 12(b)(2). The Motion is based on the following Memorandum of Law, and further argument as the Court may permit.

**MEMORANDUM OF LAW**

**I.     Introduction**

Defendant Facebook, Inc. provides its users with the ability to connect with individuals across the world and to post content, including pictures, videos, and comments, on its platforms. Facebook's users are required to comply with Facebook's "Community Standards," which outline what is and is not allowed on Facebook's platforms and prohibit the posting of specified objectionable content. "Content moderators" perform the critical and important function of reviewing content in connection with enforcing these Community Standards and removing content that violates them. Facebook contracts with third-party companies ("vendors") for the services of content moderators.

Plaintiffs are Florida- and Arizona-based content moderators who were employed by a Facebook vendor, Cognizant Technology Solutions ("Cognizant"), to enforce Facebook's Community Standards. They allege that their "exposure to graphic imagery" caused them "psychological trauma, including PTSD." First Fed. Am. Class Action Compl. 9, ECF No. 23 (Mar. 25, 2020) ("Am. Compl."). Their suit primarily seeks medical monitoring, treatment, and injunctive relief. Their Complaint should be dismissed in its entirety, and with prejudice.

As a threshold matter, the Court does not have personal jurisdiction over Facebook with respect to the claims of the Arizona Plaintiffs. Their claims indisputably arise from their experiences working as content moderators in Arizona. *See* Am. Compl. ¶¶ 79–88. Under the Due Process Clause of the U.S. Constitution, exercising personal jurisdiction over Facebook requires some connection between these claims and Facebook's contacts with **Florida**. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (stating that Due Process Clause requires claims to "'arise out of or relate to' at least one of the defendant's contacts with the forum"). Because the Arizona Plaintiffs allege no connection between their claims and Facebook's contacts with Florida, their claims against Facebook should be dismissed for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

Facebook also moves to dismiss all of Plaintiffs' claims—for negligent exercise of retained control, negligent provision of unsafe equipment, and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")—because Plaintiffs state no cause of action upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).[1]

Two of Plaintiffs' causes of action sound in negligence. *See* Am. Compl. ¶¶ 112–144. Under Florida law, because Plaintiffs' alleged injuries were not caused by any physical impact, plaintiffs may pursue negligence claims **only** if their alleged injuries arose "from their witnessing the death or injury of a loved one." *Zell v. Meek*, 665 So. 2d 1048, 1050–54 (Fla. 1995). Because Plaintiffs do not allege such injuries, their negligence claims must be dismissed.

Plaintiffs' second negligence claim, for "negligent provision of unsafe equipment," fails for an additional reason: the Amended Complaint alleges injury resulting from the **content** Plaintiffs viewed—not from any equipment. Apart from conclusory allegations, the Amended Complaint contains no facts to support a reasonable inference that Facebook's review platform itself injured the Plaintiffs.

Finally, Plaintiffs' FDUTPA claim fails for multiple and independent reasons. First, the FDUTPA expressly "does not apply to . . . claim[s] for personal injury[.]" Fla. Stat. § 501.212(3). Personal injury includes "emotional distress," physical injury, and associated medical expenses.

---

[1] Facebook is separately filing a Motion to Stay because, before it was served with this lawsuit, it settled a similar lawsuit (on which Plaintiffs patterned their Amended Complaint), initiated two years ago in California state court. The settlement class for which preliminary approval has been sought in that court encompasses all Plaintiffs in the instant case and the putative classes of Arizona and Florida moderators they seek to represent. Settlement Agreement and Release, Ex. 1 to Plaintiffs' Motion for Preliminary Approval of Settlement, at § 2.1, *Scola v. Facebook, Inc.*, No. 18-CIV-05135 (May 8, 2020). This Court should take judicial notice of the motion for preliminary approval and settlement agreement filed in *Scola*. *See MediaXposure Ltd. v. Harrington*, 2012 WL 1805493, at *3 n.3 (M.D. Fla. May 17, 2012) ("Courts may take judicial notice of filings in other cases 'without converting . . . a Motion to Dismiss into a motion for summary judgment.'") (quoting *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010)). The settlement agreement is attached as Exhibit D to the Simonsen Declaration in support of the Motion to Stay. *See* Simonsen Decl., ECF No. 38 (May 29, 2020).

Granting Facebook's Motion to Stay would obviate the need otherwise for this Court to resolve Facebook's Motion to Dismiss at the present time, and possibly ever.

*Randolph v. 9-1-19 Co.*, 2008 WL 2385230, at *1–2 (M.D. Fla. June 7, 2008) (dismissing FDUTPA claim based on plaintiff's "mental anguish, severe emotional distress, nausea," and associated "hospital fees" because "personal injuries are specifically excluded from the FDUTPA under a plain reading of the statute"). "[A] plain reading of the statute" thus forecloses Plaintiffs' cause of action under the FDUTPA.

The FDUTPA claim should be dismissed for the additional reason that Plaintiffs have not alleged the requisite "*injury or detriment to consumers*." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 4th 2015) (emphasis in original). A third reason to dismiss the FDUTPA claim is Plaintiffs' failure to plead "actual damages"—another "essential element." *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1324 (M.D. Fla. 2016).

Moreover, the absence of any nexus between the Arizona Plaintiffs' claims and Florida is as fatal to their FDUTPA claim on the merits as it is to the exercise of personal jurisdiction over Facebook. A non-resident plaintiff cannot sue a non-resident defendant under the FDUTPA for conduct that occurred outside of Florida. Neither the statute nor any case law supports this type of claim. The Arizona Plaintiffs' FDUTPA claim against Facebook thus fails for this additional reason.

For the foregoing reasons, this Court should dismiss all claims against Facebook, and do so with prejudice because the defects cannot be cured by amendment.

## II. Allegations of the Complaint[2]

### A. Content Moderation

People post "opinions, ideas, photos and videos" on Facebook's platforms to share them with audiences small and large. Am. Compl. ¶ 17. Facebook establishes rules prohibiting various types of "inappropriate content," and Facebook users report inappropriate content when they

---

[2] On a motion to dismiss, Facebook may not contest these allegations, but concedes none.

encounter it. *Id.* ¶¶ 20, 23. Content moderators employed by third-party vendors review content that users have reported and decide whether it actually violates the rules. *Id.* ¶¶ 21–23, 32.

### B. The Named Plaintiffs

Plaintiffs Debrynna Garrett and Alexander C. Roberts were employed as content moderators by Cognizant, a Facebook vendor. *Id.* ¶¶ 69–71, 79–81. Ms. Garrett has worked for Cognizant in Florida from 2018 to the present, while Mr. Roberts worked for Cognizant in Arizona from 2017 to 2020. *Id.* As content moderators, they allegedly were "exposed to thousands of images, videos, and livestreamed broadcasts of graphic violence." *Id.* ¶¶ 74, 84. "As a result" of these experiences, Ms. Garrett has been "diagnosed with PTSD," and is on a "leave of absence," while Mr. Roberts "suffers PTSD-related symptoms," "was told he needs to be treated for PTSD," and "has constant nightmares." *Id.* ¶¶ 78, 85. While making no particularized allegations of their own, the nineteen other named Plaintiffs summarily assert that they "are in a substantially identical factual situation" and "suffer from PTSD and/or related mental health impairments." *Id.* ¶ 88.

### C. Claims

Plaintiffs assert two negligence claims against Facebook: negligent exercise of retained control (Second Cause of Action) and negligent provision of unsafe equipment (Third Cause of Action). (Plaintiffs' First Cause of Action is against co-defendant Cognizant.) Plaintiffs allege that Facebook's conduct increased their "risks of injury from psychological trauma." *Id.* ¶¶ 123–124, 138–139. With respect to the unsafe equipment claim, they allege that Facebook's review platform "presented unmitigated traumatic content" to moderators. *Id.* ¶ 136. Plaintiffs also assert a claim against Facebook under the FDUTPA (Fourth Cause of Action) based on "knowingly exposing" them to graphic content; "[c]oncealing the known danger" of this content; and other alleged acts. *Id.* ¶ 149. Plaintiffs seek medical monitoring, treatment, damages, and injunctive relief. *Id.*, Prayer for Relief.

### III. Argument[3]

#### A. The Court Does Not Have Personal Jurisdiction over Facebook With Respect to the Claims of the Arizona Plaintiffs.

Claims against Facebook should be dismissed for lack of personal jurisdiction unless Plaintiffs have carried their burden to "present[] a prima facie case of jurisdiction." *Bracewell v. Nicholson Air Servs., Inc.*, 748 F.2d 1499, 1504 (11th Cir. 1984). A "prima facie case" includes "enough evidence to withstand a motion for a directed verdict," taking uncontroverted allegations of the complaint as true. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

The Arizona Plaintiffs' claims against Facebook should be dismissed because those Plaintiffs have failed to make a prima facie showing of either general or specific jurisdiction over Facebook with respect to their claims. Fed. R. Civ. P. 12(b)(2).

##### 1. The Court Lacks General Personal Jurisdiction Over Facebook.

General jurisdiction exists only when a defendant's contacts with the forum state are "so continuous and systematic" that it is "fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137-139 (2014). A corporation's state of incorporation and principal place of business are the "paradigm bases for general jurisdiction." *Id.* at 137 (alterations and citation omitted); *see also RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1234 (M.D. Fla. 2019) (same). Here, Facebook is not incorporated in Florida and does not have its principal place of business here; rather, it is incorporated in Delaware with headquarters in California. Am. Compl. ¶ 17. Nor is this an "exceptional case" warranting general jurisdiction beyond the

---

[3] Although the present motion is addressed to Plaintiffs' "First Federal Amended Class Action Complaint," ECF No. 23, that pleading is in fact Plaintiffs' *second* amended complaint. In Florida state court, Plaintiffs filed both an initial and an amended complaint. *See* Class Action Complaint, *Garrett v. Facebook, Inc.*, No. 20-CA-1146 (Fla. Cir. Ct. Feb. 5, 2020); Amended Class Action Complaint (Mar. 6, 2020); *see also Murray v. Ford Motor Co.*, 770 F.2d 461, 464 (5th Cir. 1985) (after a case is removed to federal court, "[t]he pleadings as already filed stand as if they had been filed in federal court"). That Plaintiffs filed this additional amended complaint without leave of Court or the consent of Defendants, as required under Federal Rule of Civil Procedure 15(a), provides an independent basis for dismissal.

paradigm fora. *Daimler*, 571 U.S. at 139 n.19. On these undisputed jurisdictional facts, there is no basis for this Court to exercise general jurisdiction over Facebook.

### 2. The Court Lacks Specific Personal Jurisdiction Over Facebook.

The exercise of specific personal jurisdiction over a nonresident defendant must comply with the Due Process Clause. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350, 1355–58 (11th Cir. 2013). Courts within the Eleventh Circuit apply the familiar "three-part due process test":

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Id.* at 1355 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 474–75 (1985)).

In a class action, each and every named plaintiff must demonstrate personal jurisdiction with respect to his or her claims. *See Story v. Heartland Payment Sys., LLC*, 2020 WL 2559755, at *9–10 (M.D. Fla. May 20, 2020) (dismissing claims of those named plaintiffs in class action who failed to demonstrate personal jurisdiction with respect to their claims). This rule comports with the general requirement that in a case "based on specific jurisdiction," the plaintiff must establish personal jurisdiction "as to each claim separately." *Advantus, Corp. v. Sandpiper of Cal., Inc.*, 2019 WL 4751725, at *16 (M.D. Fla. Sept. 30, 2019) (considering personal jurisdiction claim by claim based on defendant's alleged conduct); *see also KVAR Energy Sav., Inc. v. Tri-State Energy Sols., LLP*, 2009 WL 103645, at *3 (M.D. Fla. Jan. 15, 2009) (stating that a court must analyze specific jurisdiction "as to each claim separately").

The Arizona Plaintiffs cannot establish even the first prong of the due process test with respect to their claims. The first prong requires a "direct causal relationship among the defendant, the forum, and the litigation." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010). Here, there is

*no* alleged relationship among the Arizona Plaintiffs' claims, Facebook, and Florida. Named Plaintiffs Alexander C. Roberts and Michael Wellman reside in Arizona. Am. Compl. ¶ 16. Mr. Roberts' claims are based on his experience "work[ing] as a Facebook content moderator at Cognizant's offices [in] Phoenix, AZ." *Id.* ¶ 79; *see also id.* ¶¶ 80-87. Similarly, Mr. Wellman does not allege he worked in Florida, and presumably his claims, too, are based on his experience working at Cognizant in Arizona. *Id.* ¶ 88 (stating that the other named plaintiffs are in "a substantially identical factual situation"). Such facts foreclose the exercise of specific jurisdiction over Facebook, because the Arizona Plaintiffs' claims do not arise from any Facebook contacts with **Florida**. Those claims should therefore be dismissed with prejudice. *See Story*, 2020 WL 2559755, at *9–10 (dismissing claims of those named plaintiffs in class action who failed to demonstrate personal jurisdiction with respect to their claims); *RG Golf Warehouse,* 362 F. Supp. 3d at 1241 (M.D. Fla. 2019) (dismissing claim because "Plaintiff has failed to satisfy the 'minimum contacts' inquiry and . . . exercising jurisdiction over Defendant would therefore violate due process").[4]

### B. Plaintiffs Fail To State a Claim for Negligence or FDUTPA.

A court should grant a motion to dismiss for failure to state a claim if the complaint does not allege "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To overcome a motion to dismiss on this basis, "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). A court also should grant dismissal when, "assuming the truth of the factual allegations of the plaintiff's

---

[4] For the same reasons, this Court is an improper venue for the claims of the Arizona Plaintiffs. *See* 28 U.S.C. § 1391(b)(2) (when all defendants do not reside in a district, venue is proper only if "a substantial part of the events or omissions giving rise to" the claims took place there); *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 n.5 (C.D. Cal. 2001) (citing cases from several jurisdictions and stating that it is "well settled" that "*each and every named plaintiff*" in a class action must show proper venue) (emphasis in original).

complaint, there is a dispositive legal issue which precludes relief." *Jacob v. Mentor Worldwide, LLC*, 389 F. Supp. 3d 1024, 1028 (M.D. Fla. 2019) (citing *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)).

### 1. Plaintiffs' Negligence Claims Should Be Dismissed.

#### a) Plaintiffs Do Not Allege Injury That Can Support a Negligence Claim.

Only in limited circumstances does Florida law permit a negligence claim in which the alleged injury does not "flow from physical injuries . . . sustained in an impact." *R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362–63 (Fla. 1995). The Florida Supreme Court has repeatedly affirmed the validity of this "impact rule." *See Fla. Dept. of Corr. v. Abril*, 969 So. 2d 201, 206 (Fla. 2007) (reciting rule and citing *R.J. v. Humana*); *Gracey v. Eaker*, 837 So. 2d 348, 355 (Fla. 2002) (same); *R.J. v. Humana*, 652 So. 2d at 363 (announcing "[w]e reaffirm today our conclusion that the impact rule continues to serve its purpose . . . , and [we] find that the impact rule should remain part of the law of this state").

Plaintiffs do not allege that they experienced any physical impact or invasion in connection with their work as content moderators. *See* Am. Compl. ¶¶ 74–78, 84–87 (alleging that Plaintiffs' injuries were "a result of the extreme working conditions and unrelenting pressure" and describing those alleged conditions, which include no physical impact or invasion). Therefore, to defeat Facebook's motion to dismiss, Plaintiffs must fit their negligence claims within Florida's narrow category of exceptions to this requirement. They fail to do so.

Specifically, in the absence of a physical impact, negligence plaintiffs must allege that their own injuries "result[ed] from a negligent injury imposed upon a close family member within the sensory perception" of the plaintiff. *Champion v. Gray*, 478 So. 2d 17, 18 (Fla. 1985); *see also Zell v. Meek*, 665 So. 2d 1048, 1050 (Fla. 1995) (describing this element as "witnessing the death or injury of a loved one"). A "close family member" definitely includes a "child, a parent, or a spouse," but outside of this small sphere, it "depend[s] upon the[] relationship and the circumstances thereof." *Champion*, 478 So. 2d at 20.

9

The requirement of a "close family relationship" is demanding. In *Zell*, just after a building was bombed, the plaintiff "made her way through the smoke to the front door" and came upon her dying father. 665 So. 2d at 1049. This plaintiff witnessed (and thus perceived) the injury, being physically present at the bombed building, and also had a close relationship to the directly injured person. She satisfied the Florida Supreme Court's test. *Id.* at 1054.

In the other direction, *Elliott v. Elliott* illustrates an insufficiently direct perception of the injury to a close relation. 58 So. 3d 878 (Fla. Dist. Ct. App. 1st 2011). The case began with the murder and dismemberment of the plaintiff's mother. *See id.* at 879. Days later, the plaintiff "led officers to the field" where his mother's mutilated remains were found; but because he was not actually "present" at the murder or immediate aftermath, he had insufficient sensory perception of it to support a negligence claim. *See id.* at 879, 882.

And *Lewis v. Middlesex Corp.* illustrates an insufficiently close relationship to the directly injured person. 2006 WL 8439385 (M.D. Fla. Oct. 11, 2006). The plaintiff witnessed a steamroller "roll over, crush[,] and kill" his cousin. *Id.* at *1. The two of them had "gr[own] up in the same town" and even lived together shortly before the accident. *Id.* However, this relationship "did not rise to the level of either a parent-child or spousal relationship," so the plaintiff "failed to establish this element." *Id.* at *4.

The allegations of the Amended Complaint fail to satisfy this prerequisite for maintaining a negligence claim. Plaintiffs do not allege that any close family members have been injured as a result of content moderation, nor that Plaintiffs directly and contemporaneously witnessed any injury to their close family members. *See Champion*, 478 So. 2d at 18; *Zell*, 665 So. 2d at 1050. Because Plaintiffs have not alleged this prerequisite for maintaining a negligence claim in the absence of a physical impact, their Second and Third Causes of Action should be dismissed.

### b) Plaintiffs Do Not Allege "Unsafe Equipment."

Apart from Plaintiffs' failure to allege the type of injury that could support any negligence theory under Florida law, their claim for "negligent provision of unsafe equipment" fails for an

independent reason: they allege injury from the **content** they viewed—not from Facebook's equipment.

When the hirer of an independent contractor supplies equipment to the contractor's employees, the hirer assumes a duty of "ordinary and reasonable care under the circumstances to supply such instrumentalities as will be reasonably safe and suitable." *Noel v. M. Ecker & Co.*, 445 So. 2d 1142, 1144 (Fla. Dist. Ct. App. 4th 1984). Under this rule, a claim based on breach of this duty must allege specifically that the provided "instrumentalities" were unsafe. *See, e.g.*, *Benitez v. Joseph Trucking, Inc.*, 68 So. 3d 428, 431 (Fla. Dist. Ct. App. 5th 2011) (defendant provided truck in unsafe condition); *Ortiz v. Lorie*, 921 So. 2d 868, 871 (Fla. Dist. Ct. App. 4th 2006) (unsafe ladder); *Noel*, 445 So. 2d at 1144 (unsafe nail gun).

In contrast to those cases, Plaintiffs here allege that their injuries were caused by what they *observed*. *See* Am. Compl. ¶ 34 ("exposure" to graphic imagery can cause injury); ¶¶ 74, 77 (describing content to which Plaintiff Garrett was allegedly exposed); ¶ 84 (the same, for Plaintiff Roberts). Plaintiffs were hired by Cognizant to view a wide range of Facebook posts to enforce the company's Community Standards, *id.* ¶¶ 1, 62, and they characterize themselves as "first responders of the internet," *id.* ¶ 10. But "what" Plaintiffs may have seen is distinct from the "instrumentalities" enabling them to see it, in the same way that a firefighter's exposure to a horrific blaze is distinct from the fire truck transporting the firefighter to the scene. Even Plaintiffs' conclusory allegation that Facebook "provided unsafe review tools" does not identify any unsafe attribute of the tools, but refers instead to the "content" they saw. *See id.* ¶ 136. A mere "formulaic recitation of the elements" is not enough to plead a viable cause of action based on unsafe equipment, and Plaintiffs' Third Cause of Action should be dismissed for this additional reason. *See Twombly*, 550 U.S. at 555.

## 2. Plaintiffs' FDUTPA Claims Should Be Dismissed.

### a) The FDUTPA Does Not Apply to Claims "for Personal Injury."

The FDUTPA expressly states that it "does not apply to . . . claim[s] for personal injury[.]" Fla. Stat. § 501.212(3); *see also Randolph v. 9-1-19 Co.*, 2008 WL 2385230, at *1–2 (M.D. Fla. June 7, 2008) (dismissing FDUTPA claim based on plaintiff's "mental anguish, severe emotional distress, [and] nausea," because "emotional distress and [associated] hospital fees . . . are personal injuries," and "personal injuries are specifically excluded from the FDUTPA under a plain reading of the statute").

"Claims for personal injury" include any claim that is based primarily on an allegation of personal injury, even when the plaintiff further alleges that the personal injury was connected to economic or other forms of injury. *See Douse v. Boston Scientific Corp.*, 314 F. Supp. 3d 1251, 1257, 1264 (M.D. Fla. 2018) (dismissing claim based on personal injury caused by defective medical device, because "it is clear that any injury [plaintiff] suffered stems from the personal injuries at the heart of this case," and "such claims are excluded under FDUTPA"). Because of this absolute bar, courts regularly dismiss FDUTPA claims predicated on personal injuries, no matter the related injuries also alleged. *See, e.g.*, *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1356 (S.D. Fla. 2009) (dismissing FDUTPA claim based on personal injury even though plaintiff further alleged "resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and death").[5]

---

[5] *See also T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (dismissing FDUTPA claim based on personal injury even though plaintiff further alleged "resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care, and treatment, loss of earnings, [and] loss of ability to earn money"); *Roberts v. Victoria's Secret Stores, LLC*, 2018 WL 8059094, at *3–4 (S.D. Fla. Dec. 3, 2018) (dismissing FDUTPA claim based on personal injury caused by defective undergarment, because the "financial harm" that plaintiff alleged "stemmed from the personal injuries that lie at the heart of this case"), *rec. adopted*, 2018 WL 8058969 (S.D. Fla. Dec. 20,

Plaintiffs' FDUTPA claim similarly rests on non-actionable allegations of personal injury, "including PTSD and other psychological disorders, physical injuries including stroke and epilepsy, and other injuries, including lost pay, lost future earning capacity, emotional distress and loss of enjoyment of life."  Am. Compl. ¶ 150.  PTSD, psychological disorders, stroke, and epilepsy are personal injuries.  And Plaintiffs' alleged "other injuries" all flow from those personal injuries.  Because personal injuries are expressly excluded from the FDUTPA, Plaintiffs' FDUTPA claim should be dismissed.

### b) Plaintiffs Do Not Allege Harm to Consumers.

Even when an FDUTPA claimant is not a consumer, the claimant must still allege "*an injury or detriment to consumers* in order to satisfy all of the elements of a FDUTPA claim." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 4th 2015) (emphasis in original).  The first element of an FDUTPA claim is an "unfair or deceptive act[] or practice[]" by the defendant, Fla. Stat. § 501.204(1), and the Florida Supreme Court expressly defines this element with reference to consumers: an unfair practice is "substantially injurious to *consumers*"; deception is "likely to mislead the *consumer* . . . to the *consumer's* detriment." *Caribbean Cruise*, 169 So. 3d at 169 (emphasis in original) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).

Courts thus dismiss FDUTPA claims that fail to allege consumer harm.  For example, in one Middle District case, a manufacturer asserted an FDUTPA claim against a distributor who had breached their contract. *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, 2018 WL 905752, at *1–4 (M.D. Fla. Feb. 15, 2018).  Stating that *Caribbean Cruise* "unequivocally instructs" that FDUTPA plaintiffs must allege harm to consumers, the court noted that the manufacturer alleged "that injury to consumers may have occurred," but offered no "facts supporting a plausible inference that any consumers have or are likely to have suffered damages."

---

2018); *Prunty v. Sibelius*, 2014 WL 6676951, at *5 (M.D. Fla. Nov. 20, 2014) (dismissing FDUTPA claim based on injury to "reproductive systems" and resulting "emotional distress" allegedly caused by deceptively marketed medication).

13

*Id.* at \*15–16.  The manufacturer's conclusory allegation that the distributor's conduct "ultimately deceived, confused, and misled consumers . . . failed to 'raise a right to relief above the speculative level' with respect to this element of the FDUTPA claim."  *Id.* at \*16 (quoting *Twombly*, 550 U.S. at 555, and dismissing claim);[6] *cf. Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1210 (11th Cir. 2012) (holding that federal courts applying Florida law must follow decisions of "intermediate appellate courts" unless the Florida Supreme Court has held or would likely hold otherwise).

Plaintiffs do not allege they were injured in their capacity as Facebook consumers.  Although non-consumers may bring an FDUTPA claim, they must still allege conduct causing harm to *consumers*.  *See Caribbean Cruise*, 169 So. 3d at 169.  Plaintiffs here do not.  Instead, they attempt to plead an FDUTPA claim by stating that "[d]efendants' unfair or deceptive acts or practices caused the injury of *the Plaintiffs and the class*," Am. Compl. ¶ 150 (emphasis added).  The alleged work-related harms are thus confined to themselves, in their capacity as content moderators, not Facebook consumers.  *See id.* ¶¶ 78, 85, 88, 150.  The element of consumer harm is absent.  Because Plaintiffs have not pleaded an "unfair or deceptive act or practice" against consumers, their claim fails.

### c) Plaintiffs Do Not Allege "Actual Damages."

Properly pleaded "actual damages" are "a required element" of a FDUTPA claim.  *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1323 (M.D. Fla. 2016).  Courts "consistently appl[y] a narrow definition" for actual damages: "[T]he difference in the market

---

[6] *See also VVIG, Inc. v. Alvarez*, 2019 WL 5063441, at \*11–12 (S.D. Fla. Oct. 9, 2019) (dismissing FDUTPA claim when plaintiffs "allege they suffered harm as a result of the Deceptive Acts but do not identify themselves as consumers or identify any other consumers harmed by the same") (citing *Caribbean Cruise*); *Collier HMA Phys. Health Mgmt., LLC v. NCH Healthcare Sys., Inc.*, 2019 WL 277733, at \*11 (M.D. Fla. Jan. 22, 2019) ("Although Plaintiffs argue that harm to consumers . . . may occur, [they do] not allege any facts supporting a plausible inference that any patients have or are likely to have suffered damages. . . .  Plaintiffs' factual allegations . . . have failed to 'raise a right to relief above the speculative level.'") (citing *Caribbean Cruise* and quoting *Twombly*); *EMP Indus., Inc. v. KECO Inc.*, 2017 WL 10899974, at \*3 (M.D. Fla. Nov. 2, 2017) ("Since the operative complaint lacks any allegations of injury or detriment to a consumer, as distinguished from the [non-consumer] Plaintiff, [the FDUTPA claim] must be DISMISSED[.]") (citing *Caribbean Cruise*).

14

value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Id.* (quoting *Dem. Rep. Congo v. Air Capital Grp., LLC*, 614 Fed. App'x 460, 472 (11th Cir. 2015)). Moreover, actual damages "must be direct damages, not consequential damages" such as "lost profits." *HRCC*, 302 F. Supp. 3d at 1323. "Cases disposing of FDUTPA claims for failing to establish actual damages are numerous." *Id*. at 1324.

Plaintiffs' FDUTPA claim formulaically recites a laundry list of alleged harms, *see* Am. Compl. ¶ 150, none of which has anything to do with the market value of a good or service. For example, Plaintiffs' conclusory allegation of "loss of enjoyment of life" is both unrelated to market value and a clear instance of prohibited "consequential damages," as any loss of enjoyment was presumably a consequence of other alleged harms. In the same vein, Plaintiffs' conclusory allegations of "lost pay" and "lost future earning capacity" miss the mark because not a single fact is alleged to support those claims—much less to connect any such losses to Facebook. *See Morales v. Bimbo Foods Bakeries Dist., LLC*, 2019 WL 354876, at *4 (M.D. Fla. Jan. 29, 2019) (reciting rule that an FDUTPA claimant "must allege . . . causation," and dismissing claim because plaintiff "does not plead that [the injury] was caused by any deceptive act or unfair practice"). If Plaintiffs mean to refer to wages that Cognizant ceased paying after "laying off its workforce" in February 2020, *see* Am. Compl. ¶¶ 7, 149(6), such losses plainly do not support any claim against Facebook. Rather, Plaintiffs complain that Facebook exposed them to graphic content while providing allegedly inadequate protections against the danger of that exposure. *See* Am. Compl. ¶ 149(1)–(5). Those allegations have no causal connection to "lost pay." *See Beale v. Biomet, Inc.*, 492 F. Supp. 2d 1360, 1374 n.12 (S.D. Fla. 2007) (in FDUTPA case arising from a defective knee replacement device, "[p]laintiffs would not be eligible for consequential damages including such things as . . . lost wages").

For this third reason, the FDUTPA claim fails.

### d) The Arizona Plaintiffs Cannot Sue Under the FDUTPA.

Some cases prohibit non-Florida citizens entirely from bringing FDUTPA claims. *See Coastal Physician Servs. of Broward Cty., Inc., v. Ortiz,* 764 So. 2d 7, 8 (Fla. Dist. Ct. App. 4th 1999) (holding that FDUTPA claims are never available to non-Florida plaintiffs). Other cases allow non-Florida plaintiffs to bring FDUTPA claims—provided that the defendant is a Florida citizen. *See Millennium Commc'ns & Fulfillment, Inc., v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1260–61 (Fla. Dist. Ct. App. 3d 2000) (allowing non-Florida plaintiffs to bring FDUTPA claim against Florida corporation). However, Facebook is not aware of a single case allowing a **non-resident plaintiff** to bring an FDUTPA claim against a **non-resident defendant**, based on **conduct occurring outside of Florida**. *Cf. id.* at 1262 ("FDUTPA . . . seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of this state[.]").

Yet that is precisely what the Arizona Plaintiffs are attempting to do here. Plaintiffs Roberts and Wellman are citizens of Arizona. Am. Compl. ¶ 16. Defendant Facebook is incorporated in Delaware and headquartered in California. *Id.* ¶ 17. Plaintiff Roberts (the only one offering specific allegations) experienced his alleged injury while "at Cognizant's offices at 2512 West Dunlap Ave., Phoenix, AZ[.]" *See id.* ¶¶ 79–85. Plaintiff Wellman is "in a substantially identical factual situation." *Id.* ¶ 88. Neither the Arizona Plaintiffs, nor Facebook, nor the alleged conduct and injury, has any connection whatsoever to Florida. Because there is no precedent for bringing a FDUTPA claim with so little connection to Florida—that is, no connection at all—the Arizona Plaintiffs' claim against Facebook should be dismissed.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' claims against Facebook should be dismissed with prejudice. A fourth opportunity to amend the Complaint would be futile, given that Facebook is not subject to personal jurisdiction in this Court with respect to the Arizona Plaintiffs' claims and that Plaintiffs' third attempt fails as a matter of law to plead the requisite elements of negligence under Florida law, or an actionable claim under the FDUTPA. *See Townsend v. Dep't of Revenue*,

16

2016 WL 8914544, at *3 (M.D. Fla. Mar. 16, 2016) (dismissing with prejudice where allowing the "Plaintiff to amend his Complaint would be futile") (citing *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)).

Dated: May 29, 2020

Respectfully submitted,

**/s/ Gregory A. Hearing**
Gregory A. Hearing (Bar No. 817790)
Sacha Dyson (Bar No. 509191)
Charles J. Thomas (Bar No. 986860)
GRAYROBINSON, P. A.
401 East Jackson Street Suite 2700
Tampa, Florida 33602
Telephone: (813) 273-5082
Fax: (813) 273-5145
Gregory.Hearing@gray-robinson.com
Sacha.Dyson@gray-robinson.com
Charles.Thomas@gray-robinson.com

*Local Counsel for Defendant Facebook, Inc.*

Emily Johnson Henn (*pro hac vice*)
Kathryn E. Cahoy (*pro hac vice*)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Fax: (650) 632-4815
ehenn@cov.com
kcahoy@cov.com

Ashley M. Simonsen (*pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
asimonsen@cov.com

*Trial Counsel for Defendant Facebook, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this **29th** day of May, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Jay P. Lechner, Esq. | Dennis P. Waggoner |
| LECHNER LAW | HILL, WARD & HENDERSON, P.A. |
| Fifth Third Center | 101 East Kennedy Boulevard, Suite 3700 |
| 201 E. Kennedy Blvd., Suite 412 | Tampa, Florida 33602 |
| Tampa, Florida 33602 | dennis.waggoner@hwhlaw.com |
| jplechn@jaylechner.com | |
| shelley@jaylechner.com | |
| | *Attorney for Defendant Cognizant Technology* |
| *Attorney for Plaintiffs* | *Solutions U.S. Corporation* |

**/s/ Gregory A. Hearing**
Attorney