# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DEBRYNNA GARRETT-ALFRED et al.,

     Plaintiffs,

v.                                Case No. 8:20-cv-0585-KKM-CPT

FACEBOOK, INC. and COGNIZANT
TECHNOLOGY SOLUTIONS U.S.
CORPORATION,

     Defendants.

_____/

## ORDER

     This cause comes before the Court on Defendant Facebook's Motion to Dismiss (Doc. 35) and Defendant Cognizant's Motion to Dismiss[1] (Doc. 36). Plaintiffs oppose both motions (Docs. 55 & 56) and request attorneys' fees under the Florida Deceptive and Unfair Trade Practices Act (Doc. 56). Facebook opposes their request for fees. (Doc. 60). For the following reasons, both motions to dismiss are granted in full and Plaintiffs' request for attorneys' fees is denied.

---

[1] Defendant Cognizant's motion included a Motion to Compel Arbitration as to Plaintiffs Jessica Young, Daniel Walker, and Dawnmarie Armato. (Doc. 35). The Court granted the motion and stayed proceedings pending arbitration as to the action between Cognizant and those plaintiffs. (Doc. 47). Accordingly, this Order does not address the claims between them. The Court uses the term "Plaintiffs" to refer instead to the remaining plaintiffs in the action whose claims have not been stayed pending arbitration.

## I.    Background[2]

This case arises from Plaintiffs' employment with Cognizant Technology Solutions U.S. Corporation (Cognizant), where they performed content moderation services for Facebook, Inc. (Doc. 23 at 2–3). Cognizant is a professional services vendor incorporated under the laws of Delaware with headquarters in Texas, and Facebook is a social media and technology company incorporated in Delaware and headquartered in California. (Doc. 23 at 6). As most Americans know, Facebook is a social networking platform that enables people to connect and share content across the internet. (Doc. 23 at 5–6). The named plaintiffs, who were living in Arizona or Florida while employees of Cognizant, bring this putative class action claim on behalf of all Florida and Arizona citizens who performed content moderation as employees of Cognizant within the last three years. (Doc. 23 at 20).

Facebook's administration of social networking platforms includes content moderation. (Doc. 23 at 6). Content moderation involves reviewing media content reported by platform users and removing content that violates the platform's terms of use. (Doc. 23 at 6). Cognizant contracts with Facebook as a third-party vendor to handle Facebook's content moderation. (Doc. 23 at 3). Plaintiffs, as employees of Cognizant, were responsible for reviewing graphic content such as murders, tortures, child

---

[2] The facts are derived from the allegations within the amended complaint, (Doc. 23), which the Court must accept as true in ruling on the instant motions to dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

pornography, and rapes. (Doc. 23 at 17–18). In their amended complaint, Plaintiffs detail the risks of repeated exposure to images of extreme violence and support their claims by citing numerous studies conducted by scientific organizations and government task forces. (Doc. 23 at 9–10). These studies specifically highlight that psychological trauma may result in both mental and physical symptoms as well as greater risk of substance abuse. (Doc. 23 at 11). As a result of their employment, Plaintiffs allege that they are at an "increased risk of developing serious mental health injuries, including but not limited to, PTSD [posttraumatic stress disorder], and associated physical injuries." (Doc. 23 at 27, 29).

Facebook helped create the Technology Coalition, a group that crafts industry standards for minimizing harm to content moderators. (Doc. 23 at 12–13). Some of the practices recommended to support content moderators include using clear terms in interviews and allowing candidates to ask questions before hiring; limiting exposure and providing counseling sessions; and permitting breaks and time off as a response to trauma. (Doc. 23 at 14). Additionally, these guidelines advise internet sites contracting with third-party vendors to clearly outline procedures to limit harmful exposure to graphic content. (Doc. 23 at 14). Plaintiffs allege that neither Facebook or Cognizant adhered to these standards. (Doc. 23 at 14–16).

Specifically, Plaintiffs allege that Cognizant concealed from employees the danger of viewing graphic images. (Doc. 23 at 22–23). Cognizant did not conduct psychological evaluations on new hires and did not provide real counseling services to

3

employees. (Doc. 23 at 15–16). Facebook pushed high standards for accuracy and timeliness, and Cognizant, in turn, placed pressure to perform on its employees. (Doc. 23 at 15–16). Facebook and Cognizant also demanded content moderators sign non-disclosure agreements (NDAs), which prohibited them from speaking about the content that they viewed. (Doc. 23 at 16). Further, Plaintiffs allege that Cognizant advertised the content moderator jobs as "prestigious career[s] in high technology that simply required them to become knowledgeable about 'leading social media products and community standards,' to 'assist our community and help resolve inquiries empathetically, accurately and on time,' and to 'make well balanced decisions and personally driven [sic] to be an effective advocate for our community.'" (Doc. 23 at 23).

## II. Motions to Dismiss for Lack of Personal Jurisdiction with Regard to Arizona Plaintiffs' Claims

First, both Facebook and Cognizant (collectively referred to as Defendants) argue that Plaintiffs have failed to establish that this Court has personal jurisdiction over them with respect to the claims of the Arizona plaintiffs—Michael Wellman and Alexander Roberts. Because the Arizona plaintiffs' claims do not arise from or relate to Defendants' contacts with Florida, Defendants' motions to dismiss for lack of personal jurisdiction are granted.

Plaintiffs argue that this Court should exercise jurisdiction over the Arizona plaintiffs' claims because personal jurisdiction principles do not bar nationwide class action suits with non-resident class members. For support, Plaintiffs cite the Seventh

Circuit's decision in *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447–48 (7th Cir. 2020), and the D.C. Circuit's decision in *Molock v. Whole Foods Market Group., Inc.*, 952 F.3d 293, 300 (D.C. Cir. 2020), for the proposition that *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2018), does not bar the exercise of specific jurisdiction over defendants when the named non-resident class members' contacts with defendants do not arise from or relate to conduct occurring within the state. (Doc. 55 at 2–4). Plaintiffs' reliance on these cases, however, is misplaced because those cases addressed personal jurisdiction over *unnamed* class members.

Named plaintiffs in a putative class action suit must comply with personal jurisdiction requirements. *Story v. Heartland Payment Sys., LLC*, 461 F. Supp. 3d 1216, 1231 (M.D. Fla. 2020); *see also Mussat*, 953 F.3d at 447–48 ("We see no reason why personal jurisdiction should be treated any differently from subject-matter jurisdiction and venue: the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so."); *cf. A&M Geber Chiropractic LLC v. Geico Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019) (applying standing requirements to named plaintiffs); *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1254 (11th Cir. 2003) (applying subject matter jurisdictional requirements to named parties), *aff'd* 545 U.S. 546, 566–67 (2005). Accordingly, the named plaintiffs in this action must show that the Court has personal jurisdiction over the Defendants.

To have personal jurisdiction over a party, a federal court sitting in diversity must

determine if the state's long-arm statute is satisfied and ensure that the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). Under Florida's long-arm statute, a defendant is subject to either specific jurisdiction, which applies if the claim arises out of or is related to defendant's contacts with Florida, or general jurisdiction, which applies regardless of whether the claims involve the defendant's activities in Florida if the defendant engages in substantial and not isolated activity in Florida. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015). Personal jurisdiction over a defendant comports with the Due Process Clause of the Fourteenth Amendment if the defendant's affiliations with the State are "so 'continuous and systematic' as to render them essentially at home in the forum State," *id.* at 1204 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)), or the defendant has such contacts with the State that "maintenance of the suit is reasonable in the context of our federal system of government and does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quotations omitted).

"'[A] corporation's operations in a forum other than its formal place of incorporation or principal place of business' will be 'so substantial and of such a nature as to render the corporation at home in that State' only in 'exceptional' cases." *Carmouche*, 789 F.3d at 1204 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Cognizant is a Delaware corporation with its principal place of business in Texas;

6

Facebook is a Delaware corporation with its headquarters in California. The only alleged connection of either corporation to Florida is the operation of Cognizant's Tampa content moderation site. (Doc. 23 at 6). These affiliations are not continuous and systematic enough to render Defendants at home in Florida. Clearly, Arizona plaintiffs have not established general jurisdiction over Cognizant or Facebook, nor do they attempt to argue otherwise. *See Waite*, 901 F.3d at 1316 ("Because Florida's long-arm provision 'extends to the limits on personal jurisdiction imposed by the Due Process Clause,' we 'need only determine whether the district court's exercise of jurisdiction over [Union Carbide] would exceed constitutional bounds.'" (quoting *Carmouche*, 789 F.3d at 1204)).

Further, the Arizona plaintiffs have not established that this Court has specific jurisdiction over Facebook or Cognizant. "In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 472–75 (1985)). The Arizona plaintiffs' claims arise from Cognizant's operation of the Phoenix content moderation site as a third-party vendor for Facebook and

Facebook's alleged continued control of and provision of equipment to that site. Defendants' Florida contacts are the operation of the Tampa content moderation site. The Arizona plaintiffs' claims are not sufficiently related to the operation of the Tampa content moderation site, so an exercise of jurisdiction over Defendants with respect to the Arizona plaintiffs' claims would violate the Due Process Clause of the Fourteenth Amendment.[3]

The allegations in the Amended Complaint do not demonstrate personal jurisdiction over Defendants with regards to the Arizona plaintiffs' claims, and accordingly, the motions to dismiss the Arizona plaintiffs' claims are granted.

## III.   Motions to Dismiss for Failure to State a Claim for Relief

Defendants also move to dismiss Plaintiffs' Amended Complaint for failure to state a valid claim for relief. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the

---

[3] Even under the broadest reading of "arising out of or related to" in the Supreme Court's recent opinion in *Ford Motor Co.*, the Arizona plaintiffs still fail. *See* 141 S. Ct. at 1026–27. In *Ford Motor Co.*, Ford's contacts with the forum state included immense amounts of advertising, multiple franchises and dealerships that sold and serviced Ford vehicles, and shipment of replacement parts, to name a few. *Id.* at 1028. These contacts are exponentially greater than Cognizant's contact with Florida: a single content moderation site. "Related to" in *Ford* meant a substantial connection between its contacts with the State and the plaintiffs' claims. *Id.* Here, none of Cognizant's activities in Florida are linked to the operation of the Arizona content moderation site, the basis of the Arizona plaintiffs' claims.

defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

### A. Count I: Fraudulent Concealment

In Count I, Plaintiffs allege that Defendant Cognizant deliberately concealed or misrepresented the facts of a known danger, namely the dangers of exposure to "highly toxic, unsafe, and injurious content while providing content moderation services." (Doc. 23 at 22). Although the Amended Complaint names both fraudulent (or deliberate) concealment and fraudulent misrepresentation, the Plaintiffs oppose the motion to dismiss Count I under only a fraudulent concealment theory. The Court therefore construes the amended complaint as alleging only this latter kind of tort; alternatively, the Court finds that Plaintiffs have abandoned the fraudulent misrepresentation theory of liability by failing to address it in its response. *See Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (De Ment, J.) (concluding that a plaintiff's failure to respond to claims in a defendant's motion to dismiss resulted in dismissal of those claims as abandoned); *cf. Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials

before it . . . .").

In addition to the ordinary pleading requirements, a plaintiff must satisfy Rule 9's heightened pleading standard when alleging deliberate concealment because it sounds in fraud. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017) ("The . . . claim for fraudulent concealment is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."); *Kish v. A.W. Chesterton Co.*, 930 So. 2d 704, 707 (Fla. 3d DCA 2006) (defining "fraud" to include a knowing concealment). Rule 9(b) "requires a complaint to set forth: (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud." *In re Galectin Therapeutics, Inc. Secs. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016).

Plaintiffs' allegations that Cognizant deliberately concealed the dangers of their jobs by failing to disclose the risks to them and by requiring them to sign broad NDAs are insufficient under Rules 8 and 9. Under Florida law, "the elements of a fraudulent concealment claim are as follows: (1) the [defendant] concealed or failed to disclose a material fact; (2) the [defendants] knew or should have known the material fact should be disclosed; (3) the [defendants] knew their concealment of or failure to disclose the

material fact would induce the plaintiffs to act; (4) the [defendants] had a duty to disclose the material fact; and (5) the plaintiffs detrimentally relied on the misinformation." *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015).

First, under the heightened pleading standard of Rule 9(b), Plaintiffs must plead with particularity the "omissions [that] where made in which documents or oral representations." *In re Galectin*, 843 F.3d at 1269. While "by definition, Plaintiffs cannot point to one particular statement because an omission is a non-statement," *In re Takata Airbag Prods. Liab. Litig.*, 464 F. Supp. 3d 1291, 1303 (S.D. Fla. 2020) (Moreno, J.), Plaintiffs must still allege specific facts or materials that were concealed and must plead more than "conclusory allegations." *See, e.g., Douse v. Boston Sci. Corp.*, 314 F. Supp. 3d 1251, 1263 (M.D. Fla. 2018) (Chappell, J.) (finding too vague an allegation that the defendant concealed "that the [product] was not safe" because it failed to allege specific facts that were concealed); *Padilla v. Porsche Cars N. Am., Inc.*, No. 18-24988-CIV-MORENO, 2020 WL 1472301, at *3 (S.D. Fla. 2020) (Moreno, J.) (dismissing a fraudulent concealment tolling claim where complaint alleged that the defendants failed to disclose material information but did not point to precise statements, documents, or misrepresentations or how any statements were misleading). Here, Plaintiffs do not allege specific information related to the dangers of content moderation that Cognizant withheld like, for example, safety reports. *See Dugas v. 3M Co.*, 101 F. Supp. 3d 1246, 1254–55 (M.D. Fla. 2015) (Davis, J.) (allowing claim that one defendant knew of report that its products did not protect against asbestos but dismissing claims against

11

defendants without comparable allegations). And "bare contentions" that Cognizant concealed from the Plaintiffs the dangers of content moderation are not enough, particularly when those allegations fail to identify who should have warned them, when they should have been warned, and where they should have been warned. *See Greenberg v. Miami Children's Hosp. Rsch. Inst., Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003) (Moreno, J.) ("Yet, their bare contention that the intent to patent was fraudulently concealed is not sufficient, because this intent was not accompanied by any time and place details.").

Plaintiffs' allegations that Cognizant required broad NDAs similarly do not satisfy the Rule 9(b) pleading standard because they have not alleged what the NDAs prohibited the Plaintiffs from discussing and with whom, where, and when. Plaintiffs' allegations that Cognizant "deliberately concealed and misrepresented these dangers to Plaintiffs" are "legal conclusions rather than empirically provable facts," *Douse*, 314 F. Supp. 3d at 1263, and do not satisfy Rule 9(b).

Further, Plaintiffs allegations contradict their claim that Cognizant concealed the dangers of content moderation. Plaintiffs assert that "[i]t is well known that exposure to images of graphic violence can cause debilitating injuries, including PTSD." (Doc. 23 at 9). Plaintiffs also describe with detail the numerous studies and available research on the psychological dangers posed by exposure to graphic images, and they do not allege that they were unaware that they would be reviewing these kinds of images as content moderators. By Plaintiffs own allegations, any danger was then fully accessible

to them through due diligence. *See Greenberg*, 264 F. Supp. 2d at 1073–74 (dismissing a claim for fraudulent concealment where plaintiffs could have discovered an intent to patent by a "simple phone inquiry"). Facts are not deliberately concealed when they were reasonably accessible to the plaintiffs. *Id.* (citing *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. 388, 396–97 (E.D. La. 1997) ("Claims of fraudulent concealment generally require that plaintiff allege and prove that defendant wrongfully concealed information and that plaintiff did not have actual or constructive knowledge of the information, and could not have learned of the information through the exercise of due diligence.")); *see also West Brook Isles Partner's 1, LLC v. Com. Land Title Ins. Co.*, 163 So. 3d 635, 639 (Fla. 2d DCA 2015) ("Where there was no active concealment and a party with the exercise of due diligence could have discovered the facts, the statute of limitations is not tolled."). Under Plaintiffs' theory, an employer would be liable for failing to disclose every obvious danger to which an employee might be exposed prior to hiring.

Next, Plaintiffs fail to allege a relationship of trust that would create a duty to disclose the dangers of content moderations. In Florida, a fraudulent concealment claim based on omission "must be accompanied by allegations of a special relationship that gives rise to a duty to speak." *Greenberg*, 264 F. Supp. 2d at 1073. "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *TransPetrol, Ltd. V. Radulovic*, 764 So. 2d 878, 880 (Fla. 4th DCA 2000). Plaintiff alleges no duty that

Cognizant had to disclose the dangers of content moderation to them or any special relationship that would give rise to such a duty.

Finally, Plaintiffs fail to allege that they relied on Cognizant's omission. "Florida law imposes a reliance requirement in an omissions case, which cannot be satisfied by assumptions." *Humana, Inc. v. Castillo*, 728 So. 2d 261, 265 (Fla. 2d DCA 1999). "Florida law also requires a party asserting fraud to establish that but for the alleged misrepresentation or nondisclosure, the party would not have entered the transaction." *Id.* Here, Plaintiffs do not claim to have relied on Cognizant's alleged concealment in anyway or that they would not have accepted jobs as content moderators if they had known about the dangers accompanying content moderation. In fact, Plaintiffs do not allege any action that was induced by Cognizant's alleged concealment or failure to disclose.

Because Plaintiffs have failed to plead facts sufficient to state a plausible claim for fraudulent concealment and failed to allege acts of fraud with the specificity required under Rule 9(b), the Court grants the motion to dismiss with regard to Count I.[4]

---

[4] Even if Plaintiffs allege fraudulent misrepresentation in Count I and have not abandoned that theory of liability, the Court concludes it does not state a claim for relief. The only statement identified with sufficient particularly under Rule 9 fails to specify who said it, when they said it, or where they said it: "Cognizant advertised the job as a prestigious career in high technology that simply required [Plaintiffs] to become knowledgeable about 'leading social media products and community standards, to 'assist our community and help resolve inquiries empathetically, accurately and on time,' and to 'make well balanced decision and personally drive [sic] to be an effective advocate for our community.'" (Doc. 23 at 23). Worse yet, Plaintiffs do not allege how this statement was false, that Cognizant knew it was false, or that they materially relied on it when accepting employment with Cognizant. *See Hearn v. Int'l Bus. Machs.*, 588 F. App'x 954, 956–57 (11th Cir. 2014) ("Under Florida law, fraudulent misrepresentation requires: '(1) a false statement concerning a material fact; (2) the

## B. Negligence

In Counts II and III, Plaintiffs allege that Facebook negligently caused them to be at risk of developing serious mental health injuries through their content moderation supervision and provision of moderation software. Plaintiffs separate their claims into negligent exercise of retained control and negligent provision of unsafe equipment. Both retention of control and provision of unsafe equipment are theories of liability that establish a duty; as such, it appears Plaintiffs allege a claim for negligent infliction of emotional distress. *See, e.g.*, *City of Miami v. Perez*, 509 So. 2d 343, 346 (Fla. 3d DCA 1987) ("To impose liability on the owner for retention of control over an independent contractor, there must be such right of supervision or direction that the contractor is not entirely free to do the work his own way."); *Noel v. M. Ecker & Co.*, 445 So. 2d 1142, 1144 (Fla. 4th DCA 1984) ("Where the employer undertakes to furnish his own employee', or those of an independent contractor, some of the implements or instrumentalities for executing the required work, he thereby assumes a duty to exercise ordinary and reasonable care . . . ." (quoting *Green v. Sansom*, 41 Fla. 94, 103 (1899))).

But Counts II and III omit the one element Florida law ordinarily requires before a plaintiff may recover for mental or emotional distress caused by negligence:  a physical impact. *Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla. 1995). "The impact rule, which is well

---

representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010))).

15

established in this state, requires that 'before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'" *S. Baptist Hosp. of Fla., Inc. v. Welker*, 908 So. 2d 317, 320 (Fla. 2005) (quoting *R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362 (Fla.1995)). Plaintiffs fail to allege any physical impact from Facebook's actions or inactions, and they therefore cannot succeed on these theories of negligence.

Plaintiffs' alleged injuries are "increased risk of developing serious mental health injuries, including but not limited to, PTSD, and associated physical injuries." (Doc. 23 at 27, 29). But the Florida Supreme Court has made clear that the impact rule does not allow recovery for physical injuries flowing from psychological injuries absent "a close personal relationship to the directly injured person." *See Zell*, 665 So. 2d at 1050, 1054. True, a claim may be sustained by even the smallest of impact, such as a gun barrel touching a plaintiff's head, but Plaintiffs have not alleged any physical contact from Facebook's agents or employees. *See Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007). Further, no other exceptions to the impact rule apply to Plaintiffs' claims nor do they allege that any do in their opposition to the motion to dismiss. *See Woodard v. Jupiter Christian Sch., Inc.*, 913 So. 2d 1188, 1190–91 (Fla. 4th DCA 2005) (citing cases for the following recognized exceptions to the impact rule: intentional infliction of emotional distress absent impact, "sensory perception" of physical injuries sustained by a close family, wrongful birth, recovery of non-economic damages for

parents of stillborn child, breach of statutory duty of confidentiality to patient, and psychological injury due to attorney's negligence). Accordingly, Plaintiffs fail to state a claim for negligent infliction of emotional distress upon which relief can be based in the Amended Complaint, and Counts II and III are dismissed with prejudice. *See Howard v. Memnon*, 572 F. App'x 692, 696–97 (11th Cir. 2014) (concluding it would be futile to amend complaint where no facts supported constitutional violation and no indication a more carefully drafted pleading might state a claim).

## C. Florida Deceptive and Unfair Trade Practices Act

Count IV of Plaintiffs' Amended Complaint (inadvertently labeled as the third count) alleges that both Facebook and Cognizant violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) by exposing Plaintiffs[5] to dangerous content, concealing the dangers, refusing to implement proper precautions, preventing Plaintiffs from becoming aware of the scope of the dangers of content moderation by requiring broad NDAs, and by misrepresenting dangers through false advertisements about the jobs. Because Plaintiffs do not allege harm caused to consumers and because claims for personal injury are excepted under FDUTPA, Plaintiffs have failed to state a claim for

---

[5] Defendants argue that the Arizona plaintiffs have not alleged facts sufficient to state a FDUTPA claim because FDUTPA does not apply to nonresidents' actions that occur outside Florida. (Doc. 35 at 18; Doc. 26 at 16). Because the Court concludes that it does not have jurisdiction over Defendants with regards to these claims and that Plaintiffs have failed to state a valid FDUTPA claim, it does not address this argument. In any event, Defendants are correct that the Arizona plaintiffs' FDUTPA claims fail because they do not allege conduct that occurred in Florida. *See Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330–31 (S.D. Fla. 2012) (Seitz, J.) ("FDUTPA applies only to actions that occurred within the state of Florida.").

relief.

FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat. To state a FDUTPA claim, a plaintiff must allege "(1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." *State v. Beach Blvd. Auto., Inc.*, 139 So. 3d 380, 393 (Fla. 1st DCA 2014). Section 501.212(3), Florida Statutes, expressly provides that the cause of action is not available for "[a] claim for personal injury or death."

Plaintiffs' Amended Complaint alleges that Defendants' actions "caused the injury of the Plaintiffs and the class, including PTSD and other psychological disorders, physical injuries including stroke and epilepsy, and other injuries, including lost pay, lost future earning capacity, emotional distress and loss of enjoyment of life." (Doc. 23 at 32). Plaintiffs seek recovery for their personal injuries, so their claim cannot be sustained under FDUTPA. *See Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1356 (S.D. Fla. 2009) (Ungaro, J.) (dismissing FDUTPA claim as one based on personal injuries where plaintiff alleged that "decedent suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and death"); *Douse*, 314 F. Supp. 3d at 1264 (dismissing FDUTPA claim for damages related to medical device that caused injury to plaintiff).

Further, even if Plaintiffs claims were not excepted by the language of FDUTPA, Plaintiffs still fail to state a valid claim of relief because they do not allege an act that was deceptive to *consumers*. For an act to be a deceptive act under FDUTPA, it must be likely to mislead a consumer to a consumer's detriment. *See Angelo v. Parker*, 275 So. 3d 752, 755 (Fla. 1st DCA 2019) ("A deceptive practice is one 'likely to mislead consumers acting reasonably in the circumstances, to the consumers' detriment.'" (quoting *Beach Blvd. Auto.*, 139 So. 3d at 387)); *Molina v. Aurora Loan Servs.*, LLC, 635 F. App'x 618, 627 (11th Cir. 2015) (concluding that a statement on loan servicer's website assuring "their borrowers and public in general that they will help their clients facing long term hardship to cure his/her default with loan modification" was not deceptive to consumers). Plaintiffs' claims do not allege that Cognizant's or Facebook's actions misled consumers in any way; they allege only that employees were deceived. Accordingly, Plaintiffs have failed to state a claim under FDUTPA and Count IV is dismissed with prejudice. *See Fetterhoff v. Liberty Life Assur. Co.*, 282 F. App'x 740 (11th Cir. 2008) (holding that amendment would be futile where plaintiffs claim were preempted and thereby legally barred); *see also Howard*, 572 F. App'x at 697 ("If a more carefully drafted complaint could not state a claim, then dismissal is proper.").

**D. Medical Monitoring**

Throughout the Amended Complaint, Plaintiffs ask this Court to establish a medical monitoring fund to provide treatment and services for class members. (Doc. 23 at 23, 27, 29–30). Florida allows courts to establish medical monitoring schemes in

some mass tort actions before the party seeking relief has developed identifiable injuries.[6] *Petito v. A.H. Robins Co.*, 750 So. 2d 103, 104 (Fla. 3d DCA 1999). Medical monitoring claims ordinarily arise in cases where plaintiffs have diagnosable health conditions resulting from exposure to hazardous substances or medical products. *See, e.g.*, *Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635 (Fla. 3d DCA 2006) (class action against manufacturer of hormone replacement therapy drug); *Petito*, 750 So. 2d at 104 (class against against manufacturers of pharmaceutical weight loss products); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262 (S.D. Fla. 2003) (suit against manufacturer of over-the-counter dietary supplement); *Jerue v. Drummond Co.*, No. 8:17-CV-587-T-17AEP, 2017 WL 10876737, at *14 (M.D. Fla. 2017) (Kovachevich, J.) (suit against mining company for exposure to radiation from phosphate). It is not clear that Florida law permits a medical monitoring regime to be created for mental health conditions like PTSD or trauma. Even assuming it does, Plaintiffs have failed to state a valid claim for medical monitoring.

To state a claim for a medical monitoring, Plaintiffs must establish "(1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring

---

[6] Some Florida courts describe this as a "cause of action," even though it appears to be a specific pleading requirement for a tort claim remedy. *See, e.g.*, *Petito*, 750 So. 2d at 105; *Jerue v. Drummond Co.*, 2017 WL 10876737, at *14 (M.D. Fla. 2017) (Kovachevich, J.). Regardless, Plaintiffs have failed to adequately plead a claim for medical monitoring.

procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles." *Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 640 (Fla. 3d DCA 2006). Leaving aside the fact that Plaintiffs have not adequately alleged Defendants' negligence, the Amended Complaint does not allege that a monitoring procedure exists for psychological injuries, that screening for these psychological injuries is different amongst person exposed to graphic images, or that a monitoring procedure is necessary according to modern scientific principles. Accordingly, Plaintiffs have failed to state a valid claim for medical monitoring.

### E. Prevailing Party Attorneys' Fees under FDUTPA

Plaintiffs, in their Response to Facebook's Motion to Dismiss, contend that they are entitled to attorneys' fees as prevailing parties under FDUTPA. According to them, they have obtained judicially sanctioned relief in a California class action case that would include relief for Plaintiffs' claims against Facebook and preclude further litigation. (Doc. 56 at 13–14); *Selena Scola, et al. v. Facebook, Inc.*, No. 18-civ-05135 (Cal. Super. Ct. filed Sept. 21, 2018). Plaintiffs' assertions are misplaced for several reasons.[7]

First, the California Superior Court has not approved the settlement agreement yet, so no party has secured a final judgment providing relief. Second, under the text of

---

[7] In addition, Plaintiffs should have set forth their request in a separate motion. *See* Fed. R. Civ. P. 7(b).

section 501.2105, Florida Statutes, which governs attorneys' fees in FDUTPA claims, a party must obtain a judgment in the *instant* litigation to be considered a prevailing party. *See* § 501.2105(1) ("In any civil litigation resulting from an act or practice involving a violation of this part, . . . the prevailing party, after *judgment in the trial court* and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party." (emphasis added)); *see Money v. Home Perf. Alliance, Inc.*, No. 2D19-1642, 2021 WL 45658, at *2–3 (Fla. 2d DCA 2021) (concluding that "[u]nder the statute's plain and obvious meaning, it is only after entry of judgment in the trial court that the prevailing party may be entitled to attorney's fees"). Accordingly, Plaintiffs cannot recover attorneys' fees in this case unless and until they obtain a final entry of judgment in this action. *See Money*, No. 2D19-1642, 2021 WL 45658, at *2–3. They have not done so; in fact, the Defendants have now secured a dismissal with prejudice of all the claims.

## IV.    CONCLUSION

Plaintiffs fail to establish that this Court has personal jurisdiction over either Defendant with regards to the Arizona plaintiffs' claims. Further, the Plaintiffs fail to state a claim upon which relief can be granted for all counts in the Amended Complaint. Finally, the Court denies Plaintiffs' requests for attorneys' fees under FDUTPA. Accordingly, the following is **ORDERED**:

1.   Defendants Facebook and Cognizant's Motions to Dismiss (Docs. 35 & 36) are **GRANTED** in their entirety.

22

2. Plaintiffs Alexander C. Roberts and Michael Wellman's claims are **DISMISSED without prejudice** for lack of personal jurisdiction.

3. Count I (fraudulent misrepresentation or concealment) is **DISMISSED without prejudice** as to Plaintiffs Debrynna Garrett, Timothy Dixon, Jr., Konica Ritchie, Lamond Richardson, Angela Cansino, Johnny Olden, Katrina Evans, Todd Alexander, Elton Gould, Lameka Dotson, Nicholas Collins, Remeal Eubanks, Tania Paul, Gabrielle Murrell, and Courtney Nelson.

4. Counts II and III (negligence) are **DISMISSED with prejudice**.

5. Count IV (FDUTPA) is **DISMISSED with prejudice** as to all claims against Facebook and as to the claims between Cognizant and Plaintiffs Debrynna Garrett, Timothy Dixon, Jr., Konica Ritchie, Lamond Richardson, Angela Cansino, Johnny Olden, Katrina Evans, Todd Alexander, Elton Gould, Lameka Dotson, Nicholas Collins, Remeal Eubanks, Tania Paul, Gabrielle Murrell, Courtney Nelson.

6. Plaintiffs request for attorneys' fees is **DENIED without prejudice**.

7. The Clerk is directed to administratively close the case, terminate all pending motions, and terminate all parties except those whose proceedings were stayed by the Court's Order dated June 11, 2020 (Doc. 47), namely Plaintiffs Jessica Young, Daniel Walker, and Dawnmarie Armato, and Defendant Cognizant.

**ORDERED** in Tampa, Florida, on May 14, 2021.

Kathryn Kimball Mizelle
United States District Judge